BROWN vs. HOWARD & HOWARD.

Where it appears *clearly* from a charter-party, that the intention of the owner of the
ship and the charterer is that the former shall have no lien on the freight, but
shall give a personal credit to the charterer, the former loses his right of lien on the
cargo, and can look only to the personal responsibility of the charterer for the
payment of the hire of the vessel.

Thus, where it was agreed in a charter-party, that a vessel should be chartered for
fifteen months, at 2000 dollars per month, to be employed in the Pacific trade,
and that the payments for the hire of the vessel should be made semi-annually in
the city of New York; *Held*, that the owner of the vessel had lost his right of
lien on the cargo for the non-payment of the sum stipulated in the charter-party.

APPEAL from the district court of the district of San Fran-
cisco. The facts are stated in the opinion of the court.

*Allen T. Wilson*, for the attaching creditor.

*Ogden Hoffman, Jr.*, for the interpleader.

*Horace Hawes*, for the defendants.

*By the Court*, HASTINGS, Ch. J. The plaintiff Brown
brought a suit against the defendants Howards in the district
court of the fourth judicial district, to recover a sum of money,
alleged to be due from the defendants to plaintiff, and sued out
an attachment under which the sheriff of San Francisco seized
a quantity of coal on board the ship *Orphan*. Soon thereafter,
one Tyson, by virtue of section 37 of the statute entitled, "An
Act to Regulate Proceedings against Debtors by Attachment,"
interpleaded in the suit, claiming to have a lien on the coal for
the hire of the ship. Plaintiff filed an answer denying that
Tyson had any lien on the coal, and the cause came on for trial
on the 16th day of January last on this issue, and judgment
was rendered to the effect that Tyson had such lien. Brown
appealed to this court, and the question now is, whether, under

the state of facts appearing before the district court on the trial, Tyson had the lien. If he had, the judgment must be affirmed; if not, it must be reversed.

This question must be determined by an examination of the charter-party set out in the interpleader, and proved on the trial. By that, Tyson let the ship *Orphan* for fifteen months to the Howards, (and they were at liberty to keep her nine months longer on the same terms,) at the rate of two thousand dollars per month, payment to be made semi-annually in New York. By the charter-party, the time commenced running when the ship was ready to load in England, from which she was to proceed to some port in the Pacific Ocean, where she was to be employed until the close of the term, 15 months or two years, as the charterers should elect. The vessel was to be returned to New York or England. A right to detain goods until the freight thereon is paid, which is the lien claimed in this case, grows out of the usage of trade. (*Chandler* v. *Belden,* 18 *Johnson's Rep.* 157.) Although a part of the law laid down in the above case has been in effect overruled, yet the principle above announced has never been questioned. Where there is a known usage of trade, persons carrying on that trade are held to have contracted in reference to the usage, (unless the contrary appear,) and the usage forms a part of the contract. Hence it is evident that a lien, if any exist, is the result of a contract, and if, taking the usage of trade and the stipulations of the charter-party into consideration, it can be fairly inferred that the parties to the charter-party intended that the ship owners should have the right to retain the goods, until the lien of the ship should be paid, as security for such hire, then Tyson has the lien. If they did not so intend, then the lien does not exist. That this is the true doctrine is evident from the opinion of Tindal, chief justice, in the case of *Belcher* v. *Cooper,* decided in 1842, (*English Com. Law Rep.* vol. 43, *page* 262,) where, after an examination of the cases, the right of lien is made to turn upon the question, whether the parties to the charter-party "intended that a personal credit should be given to the charterer for the payment of the hire of the vessel," or "whether a

" right of stoppage of the goods was intended to be reserved to " the owners, as security for the pay of the contract price." (See also, *Abbott on Shipping*, 299 ; *Angell on Common Carriers, sec.* 386, 387–8–9.) In section 388, the case of *Pinney* v. *Wells*, (10 *Conn. Rep.*,) is cited, in which case the court held that, " if by the original contract made, the carriers waived any " lien for freight, and instead of leaving their payment to the " implication of law, they *contracted* to give a credit for the " freight, then, whether they had parted with the possession or " retained it, they must look only to the contract they had en-" tered into for their security." We think that by the terms of this charter-party it is evident that the owners looked to the personal responsibility of the charterers alone for their security, and not to the security that a right to retain the goods would afford.

The first voyage was to commence somewhere in England, and end at some port in the Pacific ocean, wherever the charterers should choose, and the subsequent voyages, as to *beginning, ending, and duration*, were uncertain. It would be unreasonable to hold that it was the intention of the parties, that as soon as the ship had arrived at the end of a voyage in some remote port in the Pacific ocean, the master should refuse to discharge and deliver the cargo until information could be obtained from New York as to the prompt payment of the half-yearly instalments. We must infer, therefore, that Tyson, in letting the ship to hire, did so on the credit of the personal responsibility of the charterers. From the remote and uncertain service in which the ship was to be employed, payment on delivery of cargoes would have been inconvenient to all parties, and the time and place of payment were fixed without reference to the voyages of the ship, which we believe to be inconsistent with the right of lien set up by Tyson. We are therefore of opinion, that the ship owners can have no lien under the charter-party, and that so much of the judgment of the court below as declares such a lien to exist, should be reversed.

Ordered accordingly.