[S. F. No. 5421. In Bank.—June 17, 1912.]

## G. W. PEEK, Respondent, v. S. STEINBERG et al., Appellants.

CONTRACT FOR SHARES IN CORPORATION TO BE FORMED—EMPLOYMENT AS CORPORATE OFFICIAL—CORPORATION NOT LIABLE IF CONTRACT IS NOT ACCEPTED BY IT.—An agreement, which by its terms only purported to bind the individuals executing it, whereby the promissors agreed, in consideration of the assignment of certain property rights to a corporation to be subsequently formed, that the promissee should receive a certain amount of paid up stock therein and should be

employed as an official thereof at a stated salary, and which contained a provision that its substance should be embodied in the by-laws of the corporation and a contract made by it accordingly, if unaccepted by the corporation, is not enforceable against it.

ID.—PLEADING—INSUFFICIENT ALLEGATIONS OF ACCEPTANCE BY CORPORATION.—In an action to recover for the breach of such agreement, brought against the corporation subsequently formed and the individuals executing it, the complaint is insufficient to show that the corporation accepted the benefits of the contract with knowledge of its terms, if it merely avers the making of the agreement by the individual parties, the assignment to the corporation by the plaintiff, and the failure of the defendants to carry out the terms of the agreement, without any averment that the corporation, at the time it took the assignment, had any knowledge of the agreement. This is so, although the complaint also alleges that the individual defendants own nearly all of the issued stock of the corporation.

ID.—GENERAL VERDICT FOR PLAINTIFF ON SEVERAL DEMANDS—FAILURE OF EVIDENCE AS TO ONE DEMAND.—Where the plaintiff in such action claimed two elements of damage, one for the failure to issue the stock to him, and the other for the failure to employ him as an official of the corporation, a general verdict returned for the plaintiff in a single sum, in pursuance of instructions to the jury presenting for determination the issues relating to both elements, cannot be upheld, if substantial error was committed with respect to one of such elements, even though the verdict rendered was for the exact amount prayed for in connection with the other.

ID.—BREACH OF CONTRACT TO EMPLOY—ALLEGATION OF PERFORMANCE—PROOF OF PREVENTION OF PERFORMANCE.—A cause of action for the refusal and failure of the defendants to employ the plaintiff as such corporate official, which is predicated upon averments to that effect in the complaint, and upon a further averment that the plaintiff had performed the contract on his part, is not sustained by evidence that the corporation did employ the plaintiff as such official, and that he was prevented by the defendants from performing his duties as such.

ID.—EXCUSE FOR NONPERFORMANCE DOES NOT SUSTAIN ALLEGATION OF PERFORMANCE.—An allegation in a complaint that the plaintiff had performed the contract sued on on his part, will not justify a recovery on proof of a valid excuse for nonperformance.

ID.—AGREEMENT FOR CORPORATE STOCK CONSTRUED.—The provision in such agreement that the plaintiff was to receive "paid up stock in such corporation" to a specified amount, did not entitle him to receive stock actually worth that amount, but merely to have stock of that nominal or par value issued to him.

ID.—MEASURE OF DAMAGES FOR FAILURE TO DELIVER STOCK—ACTUAL VALUE—BURDEN OF PROOF.—For the failure to issue such stock, the

measure of damages would be the detriment suffered by the plaintiff for such failure, that is, the actual value of the stock at the time when he should have received it. The burden of proving such damages was on the plaintiff. In the present case the record is held to disclose no substantial evidence tending to show with any approach to accuracy the value of the stock.

ID.—STOCK HAVING NO MARKET VALUE.—Ordinarily the amount recoverable for failure to deliver stock of a corporation is measured by the market value of the stock, but where it has no market value then the actual or intrinsic value must be taken as the basis.

ID.—PAR VALUE AS PRIMA FACIE VALUE—EVIDENCE OF ACTUAL VALUE. Conceding that in the absence of evidence the par value of the stock is, *prima facie,* its actual value, the defendants could meet such *prima facie* case by proof that the actual value of the stock was not equal to its par value, and where there is no established market for the shares, the inquiry into the actual or intrinsic value should not be closely restricted. In the present case, it is held that the court erred in restricting the inquiry into the business affairs and conditions of the corporation defendant for the purpose of showing such value.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Frohman & Jacobs, and Louis H. Brownstone, for Appellants.

Otto Irving Wise, for Respondent.

SLOSS, J.—The action was brought to recover damages for the breach of an agreement alleged to have been entered into between plaintiff on the one hand and the defendants Steinberg and Strauss on the other. The agreement relied upon was in the form of a letter addressed by plaintiff to said defendants. It is set out in full in the complaint as follows:

"San Francisco, June 4th, 1906.
"MESSRS. STEINBERG and STRAUSS.

"In accordance with our talk and understanding in organizing an incorporated Co. for the carrying on of the lumber business, the Copartnership known as The Greater San Fran-

CLXIII Cal.—9

cisco Lumber Company, consisting of S. Steinberg and myself, it is agreed that we shall assign all interest in said partnership to the new corporation, excepting my agency commission to the amount of 15 million feet, with the mills, and to take paid up stock in said company in payment. These contracts to be assigned to said company are as follows: The purchase of ten million feet of lumber from the Skelley Lumber Co. at $11 per M, two million feet from the Palmer Lumber Co. at same price, and ten million feet from the Riverton Lumber Co., besides such lumber as may be purchased from various mills. For such interest in these contracts as I hold I am to receive paid up stock in said corporation to the amount of $12,000 as soon as said stock can be issued, and to hold the position as a director and general manager of said corporation for the term of at least two years at a salary of $175 per month and all business expenses paid. My duty shall be the managing of all outside business, the purchasing of all lumber, shingle and other forest products handled by said corporation, and the hiring and discharging of all help employed by said company outside of the office help. It is further understood and agreed that a complete inventory shall be taken every 90 days and a dividend thus declared from the profits, quarterly. That both Mr. Steinberg and Strauss shall invest each $10,000 in cash and receive each a salary of $175 per month. If you find these conditions satisfactory kindly agree that they will be adopted in the by-laws of the corporation and a contract made with me accordingly.

"Truly yours,<br>"G. W. PEEK."

Under this writing appeared the following: "We approve of these conditions and agree to carry out same in the new corporation," to which the defendants Steinberg and Strauss signed their names. The complaint alleges that in accordance with this agreement the plaintiff did assign to the defendant corporation The Greater City Lumber Company, all of his interest in the copartnership referred to, but the defendants have failed to deliver to the plaintiff stock of said corporation, of the value of twelve thousand dollars, and have refused to employ plaintiff as the general manager of the corporation. The plaintiff further alleges performance on his

part of all the terms and conditions of his agreement and
alleges that by reason of the failure of the defendants to com-
ply with their obligations he has been damaged in the sum
of twelve thousand dollars, the value of the stock agreed to
be delivered to him, and the further sum of four thousand
two hundred dollars, his salary for two years as general man-
ager of the corporation. The complaint concludes with a
prayer for judgment in the sum of sixteen thousand two hun-
dred dollars. The defendants answered, denying perform-
ance by the plaintiff of the agreement on his part and deny-
ing breach of the agreement by them. The case was tried
before a jury which awarded a general verdict in favor of
the plaintiff and against all three defendants for twelve thou-
sand dollars. Judgment was entered accordingly.

From the judgment and from an order denying their
motion for a new trial the defendants appeal.

It is quite apparent that the judgment against The Greater
City Lumber Company cannot be sustained. The corpora-
tion was not a party to the agreement, and the writing, on
its face, did not assume to bind any one but the three indi-
viduals who executed it. The concluding words of the paper
indicate that the signers contemplated that a further con-
tract, between Peek and the corporation, should be made.
But it is not alleged that this provision was carried out. If
Steinberg and Strauss failed to comply with their undertak-
ing to have the corporation "adopt certain by-laws and make
a contract with Peek accordingly," their failure could not
make the corporation liable for the breach of a contract which
it had never made.

The respondent advances the contention that the corpora-
tion is liable because it accepted the benefits of the contract
with knowledge of its terms. But this theory, if well founded
in law, is not presented by the pleadings. All that is averred
by the complaint is the making of the agreement by Peek,
Steinberg, and Strauss, the assignment by Peek to the corpo-
ration of his interest in the copartnership, and the failure
of the defendants to carry out the terms of the agreement.
There is no averment that the corporation, at the time it took
the assignment, had any knowledge of the agreement. The
complaint does allege that Steinberg and Strauss own nearly
all of the issued stock of the corporation. It is generally

held that notice to a mere shareholder is not to be imputed to the corporation (10 Cyc. 1061, and cases cited), but if the rule were otherwise, the plaintiff would not be aided, for the reason that the allegation of ownership of the stock is directed to the time of the filing of the complaint, not to the time of the assignment to the corporation.

But there are further and more serious objections to the maintenance of the judgment as against any of the appellants. The plaintiff claimed two elements of damage, one of twelve thousand dollars for the failure to issue stock to him, the other of four thousand two hundred dollars for the failure to employ him for two years as general manager at a salary of $175 per month. The jury returned a general verdict in the sum of twelve thousand dollars. It cannot be said from the face of the verdict whether it is based on only one or both of these items. The respondent contends that the verdict is to be interpreted as refusing any relief for the failure to employ and as awarding the full amount claimed for the failure to issue stock. But we think the record affords no basis for so reading the verdict. The case was submitted to the jury on instructions presenting for determination the issues relating to both demands; and as the verdict was single, we cannot say that the jury did not consider both in fixing the amount of damages. The fact that the total sum awarded was equal to the claim for nondelivery of stock alone does not justify an inference that the damages were fixed with reference to this item alone. The jury was not bound to find that plaintiff was entitled to the full amount claimed in this behalf, and the verdict is entirely consistent with the view that something less than twelve thousand dollars was allowed on account of the stock, and the balance for failure to carry out the contract of employment.

In so far as the award may have been based on the failure to employ plaintiff as general manager, it is not sustained by the evidence. The averment of the complaint is that the defendants refused and failed to so employ him. The evidence is uncontradicted that he was so employed and that he of his own motion terminated his relations with the corporation and declined to further serve as general manager. It is claimed that the defendant Steinberg, by interfering with the performance of his duties, prevented his acting as gen-

eral manager. Without detailing the testimony we content ourselves with saying that the evidence of interference was too trivial to justify a finding of prevention. But beyond all this the complaint did not tender any issue of prevention of performance. The allegation was that the plaintiff had performed on his part. Such an allegation will not justify a recovery on proof of a valid excuse for nonperformance. "The rule is fundamental that the complaint must either allege performance or a valid excuse for nonperformance. One is not the same as the other." (*Daley* v. *Russ,* 86 Cal. 114, [24 Pac. 867] ; *Kredo* v. *Phelps,* 145 Cal. 526, [78 Pac. 1044] ; *Estate of Warner,* 158 Cal. 441–445, [111 Pac. 352].) It must therefore be held that the court erred in instructing the jury that if the defendants prevented the plaintiff from carrying out or performing the duty of general manager, such prevention would excuse the plaintiff from the further performance of his obligation to act as such general manager and he would be entitled to all the benefits of such contract which he would have obtained if the contract had been performed by all the parties. This instruction correctly defines the law in a proper case, but it is inapplicable to a case where the plaintiff, instead of averring prevention of performance or a good excuse for nonperformance, pleads and relies upon a full performance of the obligation on his part.

Since the amount claimed for failure to employ was only four thousand two hundred dollars a large part of the verdict must, in any view, have been based on the failure to issue stock, and it becomes important, therefore, to ascertain what plaintiff's rights in this regard were, and whether those rights were properly submitted to the jury for its determination.

The agreement that plaintiff was to receive "paid up stock in said corporation to the amount of $12,000" did not entitle him to receive stock actually worth twelve thousand dollars, but merely to have stock of the nominal or par value of twelve thousand dollars issued to him. (*Noonan* v. *Ilsley,* 17 Wis. 323, [84 Am. Dec. 742].) The corporation was organized with a capital stock of one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars each. An issue to plaintiff of one hundred and twenty of these shares, fully paid, would undoubtedly have been a full compliance with this part of the agreement. If

such shares had been issued to him, it would hardly have been claimed that the defendants were bound under their contract to make the actual value of the stock equal to its par value. The measure of damages for the failure to issue · the stock would, then, be the detriment suffered by plaintiff for such failure, that is to say, the actual value of the stock at the time when he should have received it. (Civ. Code, secs. 3356–3358.) Ordinarily the amount recoverable for failure to deliver stock of a corporation is measured by the market value of such stock, but where, as here, the stock has no ascertainable market value "then the actual or intrinsic value must be taken as the basis." (*Moffitt* v. *Hereford,* 132 Mo. 513, [84 S. W. 252]; *Barnes* v. *Brown,* 130 N. Y. 372, [29 N. E. 760]; *Neher* v. *Hansen,* 12 Cal. App. 370, [107 Pac. 565].)

The burden of proving the extent of his damage was, of course, upon the plaintiff. The record discloses no substantial evidence tending to show with any approach to accuracy the value of stock in the defendant corporation. But it is urged that, in the absence of evidence, the par value of stock is, *prima facie,* its actual value. Conceding the correctness of this view, which has the support of authority (*Alexander* v. *Relfe,* 74 Mo. 495; *Trust & Sav. Co.* v. *Home Lumber Co.,* 118 Mo. 447, [24 S. W. 129]), it must certainly be open to the defendants to meet the *prima facie* case by proof that the actual value of the stock was not equal to its par value. Where there is no established market value for shares, the inquiry into the actual or intrinsic value should not be closely restricted. "This value may depend on many facts and circumstances, such as the value of the property and assets owned, the dividends paid, the character and permanency of the business, the control of the stock, the management, the markets for articles produced if a manufacturing concern, and other facts. The evidence would necessarily take a broad range, and would properly be admissible to prove any fact calculated to affect the value." (*Moffitt* v. *Hereford,* 132 Mo. 513, [34 S. W. 252].) The defendants undertook to show how much lumber had been received by the corporation, and, more specifically, how much had been received under the contracts with the several lumber companies mentioned in the agreement sued upon. Testimony

relating to these matters was ruled out on the objection of the plaintiff. The evidence thus excluded was clearly relevant. The corporation was organized for the purpose of carrying on the lumber business. Among its principal assets, as plaintiff claimed, were contracts under which it was to receive at stated prices large quantities of lumber from the various companies named in the agreement. It was also to receive lumber to be purchased by Peek from various other mills. The value of these assets, and of the stock of the corporation, would be directly affected by the amount of lumber which the corporation could thus obtain. The defendants had the right to go into all the circumstances affecting these contracts for the delivery of lumber, as well as purchases made by Peek outside of the specified contracts, and to show, as bearing upon the value of the stock, how much lumber had been received by the corporation and how much it had been unable to receive. The rejection of this testimony was erroneous and manifestly prejudicial.

It becomes unnecessary, under the views expressed, to consider further points made by the appellants.

The judgment and the order denying a new trial are reversed.

Shaw, J., Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.