[S. F. No. 10056.  In Bank.—March 25, 1925.]

GEORGE U. HIND and JAMES ROLPH, Jr. (Copartners), etc., Respondents, v. ORIENTAL PRODUCTS COMPANY, INC. (a Corporation), Appellant.

[1] APPEAL—JUDGMENT—INTENDMENTS.—On an appeal the intendments are in favor of the judgment, and if the evidence in support of the verdict be substantial, either with or without conflict, the implied findings of the jury will be deemed sufficiently supported.

[2] SALES—PACKING GOODS — CUSTOM — EVIDENCE. — Where the only provision in a contract for the sale of goods with reference to the size of the bags in which the goods are to be packed is "package: usual," it is for the jury in an action to recover the purchase price to determine what packages were *usual* in the trade of which the particular shipment was a part, and evidence of custom and usage on this point is admissible for the reason that the term "usual" requires explanation, not in derogation of the contract, but in aid of its interpretation.

[3] ID.—SUFFICIENCY OF EVIDENCE.—In this action to recover the purchase price of goods sold it is held that the evidence was sufficient to support the implied finding of the jury that the goods satisfied the description required by the contract.

[4] ID.—TENDER—WAIVER OF OBJECTION—SECTIONS 1501, CIVIL CODE, AND 2076, CODE OF CIVIL PROCEDURE.—Sections 1501 of the Civil Code and 2076 of the Code of Civil Procedure relating to offer of performance and tender must be read together as though they were parts of the same statute, and when so read they mean that when a tender is made it is incumbent upon the

one to whom it is made to specify any objections which he has the opportunity to make to the terms thereof, and to specify the terms which he requires and which can be obviated by the other party, or be precluded thereafter from making such objections.

[5] ID.—OBJECTION TO TENDER — OPPORTUNITY. — The "opportunity" which the statute provides must be available to the objector to a tender includes such knowledge or such information charging knowledge of the facts surrounding the transaction as will enable the person whose rights are to be affected to act with intelligence in the protection or preservation of his rights.

[6] ID.—TENDER—REJECTION—SUFFICIENCY OF EVIDENCE.—In this action to recover the purchase price of goods it is held that from certain evidence in the case the inference might be drawn that the defendant had knowledge of the weights of the goods before its rejection of a tender.

[7] ID. — OFFER OF PERFORMANCE — GOOD FAITH — PRESUMPTION. — Where there is no showing of bad faith on the part of the sellers of merchandise in offering to perform, they are entitled to the presumption of good faith in the transaction, and if they demand something to which they are not entitled, they should be given the opportunity to recede from such demand.

[8] ID.—SECTIONS 1501, CIVIL CODE, AND SECTION 2076, CODE OF CIVIL PROCEDURE — ESTOPPEL. — The principle of estoppel embodied in section 1501 of the Civil Code and section 2076 of the Code of Civil Procedure is generally recognized.

[9] ID.—PASSING OF TITLE—IDENTIFICATION OF GOODS.—In California the title to goods sold may pass if the goods are identified, and it does not matter that weighing or measuring is necessary to ascertain the price or the quantity.

[10] ID.—TENDER—PAYMENT OF DUTY.—Although under a contract of sale of goods the sellers are obligated to deliver the merchandise free of duty, where according to custom and usage under such a contract the time of payment of the duty is when the shipping instructions are furnished, payment of the duty before making a tender is not required in the absence of the shipping instructions.

[11] ID.—USAGE — CONTRACTS. — It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract.

9. See 24 R. C. L. 20; 22 Cal. Jur. 950.

[12] ID.—OFFER OF PERFORMANCE—DELIVERY ORDER—WAIVER.—On a sale of merchandise, where objection is made by the purchaser to the form of the delivery order, but it is not suggested that the sellers are unable to do any of the things which it is claimed by the purchaser they should have done to effectuate actual possession by the purchaser, it is for the jury to determine under the evidence whether the sellers were ready and willing to perform all things necessary to transfer actual possession, and where no objection was made to the form of the delivery order, objection is waived.

[13] ID.—INTENTION OF PARTIES—TIME OF PAYMENT.—On a sale of merchandise, where it is clear that the intention of the parties was that when the goods had arrived, been inspected by the purchaser and found to be in accordance with the contract, the purchase price would be due and payable, this is not by its terms a cash-on-delivery contract, and it is held in the case at bar that the circumstances were sufficient to entitle the jury to conclude that the sellers had waived immediate payment as a condition to the transfer of the title.

[14] ID.—SUFFICIENCY OF EVIDENCE.—In this action to recover the price of goods sold it is held that taking into consideration the terms of the contract, the evidence of custom and usage not inconsistent with those terms, the contract of the parties, especially of the purchaser in waiving objections which it might have interposed, and the other circumstances appearing in the case, the evidence was sufficient to support the findings of the jury implied from the rendition of the verdict.

[15] ID.—PERFORMANCE.—Under a contract of sale of merchandise, although the failure of the purchaser to furnish shipping instructions might have justified the sellers in proceeding on the theory of excuse for nonperformance, that circumstance did not prevent them from offering to perform and thereafter alleging performance.

[16] ID.—INSTRUCTIONS — PERFORMANCE. — Although when full performance of a contract of sale of goods is alleged and excuse for nonperformance is not alleged, it is error to instruct the jury that if they should find that the purchaser failed to furnish shipping instructions when it was required to do so within a reasonable time after the arrival of the goods, and such failure or delay prevented the sellers from performing their obligations under the contract, the sellers were excused from performing such obligations to the extent that they were so delayed and prevented by the act of the purchaser, the purchaser's rights were not prejudicially affected by such instruction where the court properly instructed the jury as to the necessity of proof of full performance before a recovery could be had, and that

195 Cal.—42

in the absence of such proof by a preponderance of the evidence the verdict must be for the purchaser.

[17] ID.—INSTRUCTIONS—FAIR DEALING—INFERENCES.—In an action to recover the price of goods sold, an instruction in effect that if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the duty of the jury to draw the inference favorable to fair dealing, is a correct statement of the law.

[18] ID.—INSTRUCTIONS—BURDEN OF PROOF.—In such a case, where the court fully instructed the jury as to the burden of proof and the preponderance of evidence, there was no error in modifying an instruction proposed by the defendant striking out the clause "and that the burden of proof is upon plaintiffs to establish that fact by a preponderance of the evidence."

[19] PLEADING—AMENDMENT—DISCRETION.—An application to file a second amended complaint to conform to the proofs is addressed to the sound discretion of the trial court.

---

(1) 4 C. J., p. 731, n. 81, p. 772, n. 89, p. 773, n. 2.   (2) 17 C. J., p. 493, n. 85, p. 495, n. 86, p. 503, n. 47, p. 504, n. 68 New, p. 525, n. 87.   (3) 35 Cyc., p. 233, n. 98.   (4) 36 Cyc., p. 1147, n. 39, p. 1148, n. 31; 38 Cyc., p. 136, n. 30 New.   (5) 29 Cyc., p. 1500, n. 78.   (6) 35 Cyc., p. 171, n. 46 New.   (7) 22 C. J., p. 147, n. 52; 35 Cyc., p. 171, n. 46 New.   (8) 35 Cyc., p. 171, n. 46 New; 38 Cyc., p. 136, n. 30 New.   (9) 35 Cyc., p. 170, n. 34 New, p. 285, n. 77.   (10) 35 Cyc., p. 170, n. 34 New.   (11) 17 C. J., p. 492, n. 84, p. 493, n. 85, p. 499, n. 22, p. 508, n. 46.   (12) 4 C. J., p. 852, n. 56; 35 Cyc., p. 171, n. 46 New, p. 574, n. 84.   (13) 35 Cyc., p. 326, n. 22 New, p. 327, n. 31.   (14) 13 C. J., p. 725, n. 23, p. 753, n. 17; 35 Cyc., p. 572, n. 70.   (15) 35 Cyc., p. 532, n. 93.   (16) 4 C. J., p. 1033, n. 37; 35 Cyc., p. 577, n. 12, p. 578, n. 18; 38 Cyc., p. 1615, n. 21, p. 1786, n. 97.   (17) 22 C. J., p. 147, n. 52; 35 Cyc., p. 577, n. 13; 38 Cyc., p. 1653, n. 11 New.   (18) 38 Cyc., p. 1711, n. 19. (19) 4 C. J., p. 799, n. 34, p. 800, n. 40; 31 Cyc., p. 450, n. 72.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leo Kaufmann, Irwin L. Kaufmann, Heller, Ehrman & McAuliffe and David L. Levy and Lawrence L. Levy for Appellant.

Ira S. Lillick and Theodore M. Levy for Respondents.

SHENK, J.—This is an appeal from a judgment on a verdict in favor of the plaintiffs in the sum of $26,349.36. On the twenty-ninth day of November, 1919, the defendant purchased from the plaintiffs through W. J. Withers, a broker, a quantity of Chinese shelled peanuts. The contract was reduced to writing, and the provisions thereof with which we are here concerned are as follows: "Quantity: One hundred (100) tons. Article and description: Chinese shelled peanuts, 30/32s from Shanghai, F.A.Q. (fair, average quality) of the season. Package: Usual. Price: Thirteen cents (13¢) per pound, F.O.B. coast, duty paid, net landed weights, net cash on arrival and inspection. Shipment from China during December/January. Routing: Seller reserves the privilege of routing all freight, but will give terminal delivery by line requested by buyer." The contract was signed by the plaintiffs as sellers and by the defendant as buyer. The peanuts were shipped from Shanghai in due time, arrived at Seattle by the steamship "Eastern Victor" on March 2, 1920, and were inspected by the defendant. Prior to, at the time of and after the arrival of the vessel, shipping instructions were requested by the plaintiffs from the defendant, so that the plaintiffs could fulfill their contract to place the merchandise f. o. b. cars or carrier with terminal designated by the defendant. Shipping instructions were not given as requested nor at all. Pending the delay incident to the refusal of the defendant to furnish shipping instructions the merchandise was placed in a bonded warehouse, where it was located at the time of the tender and rejection next to be noted.

On March 8, 1920, the plaintiffs delivered to the defendant the following delivery order:

"San Francisco, March 8, 1920.

"Hind, Rolph & Co.,

   "Seattle, Wash. ——Warehouse.

"Deliver to Oriental Products Company, Inc., or order one hundred tons shelled peanuts (1112 bags) marked:

H.R. No. 18. San Francisco (100 tons only) Peanuts. No. 18. ex S. S. — Eastern Victor.

> "(Signed) HIND, ROLPH & COMPANY,
>
> "Per J. L. KEEGAN."

Accompanying the delivery order was the following invoice:

"No. 2112.                    San Francisco, March 8, 1920.

"The Oriental Products Company, Inc.,

"San Francisco, Calif.

"Bought of Hind, Rolph & Co., 230 California Street. Payable net cash on arrival and inspection. In U. S. gold coin. Peanuts. No. 18.     33—Eastern Victor.     1112 bags (180 lbs. net) Chinese shelled peanuts. Gross 202,940 lbs. Tare 2780 lbs. Net 200,160 lbs., at 13 cents per lb. f. o. b. Coast, duty paid, net landed weights, $26,020.80.

"E. & O. E. (errors and omissions excepted).

"JLK—EK."

Thereafter the defendant on the date it bears delivered to the plaintiffs the following document:

"March 11, 1920.

"Hind, Rolph & Co.,

"230 California Street,

"San Francisco, Calif.

"Gentlemen: We are herewith enclosing delivery order and invoice, covering 100 tons shelled peanuts tendered. We regret exceedingly that we are obliged to reject this tender because of the fact that the goods are packed in 180# bags instead of 100# bags as purchased, and in addition to this that the report from Seattle on the count is thirty-two thirty-four instead of thirty thirty-two, as purchased. Regretting the necessity of rejecting this tender, we beg to remain,

> "ORIENTAL PRODUCTS CO.
>
> "E. W. ROSSTON."

Subsequent to the foregoing rejection of tender this action was brought and went to trial on an amended complaint filed August 23, 1920, which charges in two counts. The first count alleges, among other things, the contract of purchase and sale, the arrival of the goods and the inspection thereof by the defendant, the tender of the goods with an intention to transfer the title to the defendant, the rejection of

the tender, the refusal to accept the goods or pay for the same, and the purchase price based on the gross shipping weights. The second count alleges damages in the sum of $490.68 on account of warehouse charges. During the course of the trial the plaintiffs, by leave of court, filed a second amended complaint to conform to the proof wherein the alleged purchase price was based on the net landed weights less three-quarters of a cent per pound duty. The defendant admitted by its answer that it had agreed to purchase the peanuts, but set forth that the price alleged in the amended complaint was not based on the net landed weights with duty fully paid; that the sum demanded was not based on the true net landed weights, but upon the gross shipping weights from the Orient; that the plaintiffs had not paid the duty on the merchandise; that the same was not properly prepared for delivery, in that the peanuts were packed in 180-pound bags and not in 100-pound bags, and that the peanuts were not of the size or quality contracted for. The verdict was for the purchase price alleged in the second amended complaint under the first cause of action and for the damages alleged in the second cause of action.

The complaints were drawn and the case was tried so far as the plaintiffs were concerned upon the theory that the tender was made with the intention to pass title; that the title thereby passed to the defendant, and that because of the rejection of the tender the plaintiffs were entitled to recover the purchase price in accordance with the provisions of sections 1141, 1485, 1502, and 3310 of the Civil Code. It was and is the contention of the defendant that the tender was not made with the intention to pass the title; that the title did not thereby pass; that the measure of damages as provided by section 3311 of the Civil Code should have been applied, and that the plaintiffs have therefore mistaken their remedy. In its conduct of the case the trial court adopted the theory of the plaintiffs as applied to the facts and the verdict of the jury was in favor of the plaintiffs on that theory. [1] The intendments are in favor of the judgment, and if the evidence in support of the verdict be substantial, either with or without conflict, the implied findings of the jury will be deemed sufficiently supported. (*Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800] ; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157] ; *Ryder* v.

*Bamberger*, 172 Cal. 791 [158 Pac. 753] ; 2 Cal. Juris. 879, and cases cited.)

It appears without conflict that at the time of the tender, on March 8, 1920, the plaintiffs had not paid the duty, had not ascertained the net landed weights, and based the amount of the invoice on the gross shipping weights. From these facts it is contended by the defendant it must follow that the plaintiffs had not complied with their contract, had conditioned the tender on an excessive demand, and therefore could not pass title and place the defendant in default. The plaintiffs counter that in the defendant's letter rejecting the tender the defendant specified objections to the tender on two grounds only, that the objections stated were unjustified, were found by the jury to be unjustified, and that by the failure of the defendants to object at the time to the tender on other grounds later insisted upon, all such other objections were waived under section 1501 of the Civil Code and section 2076 of the Code of Civil Procedure.

[2]  The objections to the tender specified in the defendant's letter of rejection were "that the goods are packed in 180-pound bags instead of 100-pound bags as purchased," and "that the report from Seattle on the count is thirty-two thirty-four instead of thirty thirty-two as purchased." As to the size of the bags the only provision in the contract having reference to the subject is "Package: Usual." There is nothing in the contract requiring shipment in 100-pound bags. It therefore became necessary for the jury to determine what packages were *usual* in the trade of which this particular shipment was a part, that is to say, whether in the shipment of shelled peanuts from Shanghai at the time in question it was customary and usual to use 180-pound bags. The court properly permitted evidence of custom and usage on this point for the reason that the term "usual" required explanation, not in derogation of the contract, but in aid of its interpretation (subd. 12, sec. 1870, Code Civ. Proc.). It was in evidence that in the absence of a specific provision of the contract as to size of bags to be used it was optional with the shipper at Shanghai to select the size. There was abundant evidence that under such circumstances a bag of from 100 to 200 pounds capacity, including a 180-pound size, was usual and customary. Witness Withers, the broker who negotiated the sale, so testified, as did also wit-

nesses Barrichow, Ward, Newhall, Dill, Sternau, Groom, and Hadden.

Concerning the quality of the peanuts the contract provided that they should be 30–32's, that is, from thirty to thirty-two whole peanuts to the ounce. It will be noted that the letter rejecting the tender did not state as a fact that the peanuts were not of the required size, but only that "the report from Seattle on the count" was that they were 32–34's. The agent of the defendant at Seattle inspected the goods and took samples before the rejection. Samples were also mailed to the defendant at San Francisco prior to the rejection. The plaintiffs procured samples and had counts made prior to that time. The evidence was in conflict as to the result of the several countings but there was substantial, direct and positive evidence of those who had weighed the sample that the peanuts were 30–32's as required. **[3]** The testimony of the witnesses O'Brien, Keegan, Beamer, and Newhall was sufficient to support the implied finding of the jury that the peanuts satisfied the description required by the contract.

As to the objections not mentioned in the letter rejecting the tender, it is the contention of the plaintiffs that they were, and each of them was waived by the defendant because of its failure to specify the same as provided in the code sections mentioned. Section 1501 of the Civil Code reads: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated." Section 2076 of the Code of Civil Procedure provides: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms or kind which he requires, or be precluded from objecting afterwards." **[4]** These two sections must be read together as though they were parts of the same statute (Pol. Code, sec. 4480; *Allen* v. *Chatfield*, 172 Cal. 68 [156 Pac. 47]). When so read and applied to the present case they would mean that when the tender was made to the defendant it was incumbent upon

it to specify any objections which it had the opportunity to make to the instruments tendered by the plaintiffs or to the terms thereof, and to specify the terms which it required and which could be obviated by the plaintiffs or be precluded thereafter from making such objections. **[5]** The "opportunity" which the statute provides must be available to the objector would include of course such knowledge or such information charging knowledge of the facts surrounding the transaction as would enable the person whose rights were to be affected to act with intelligence in the protection or preservation of his rights. In this connection it is earnestly insisted by the defendant that the tender by plaintiffs was attended by an unauthorized condition of payment, in that the amount of the bill as specified in the invoice, although appearing as based on the net landed weights, was in reality based on the gross shipping weights from the Orient, and that the defendant had no knowledge at the time it specified its objections to the tender that such amount was not based on the net landed weights.

**[6]** At the close of the plaintiff's case the defendant made a motion for a nonsuit on the ground that the evidence was insufficient to support a verdict in favor of the plaintiffs and particularly that there was no evidence that the defendant knew prior to its rejection of the tender what the gross shipping weights were. The motion was denied and the ruling is assigned as error. But there was evidence introduced during the plaintiffs' case in chief from which the jury might infer that the defendant knew the amount of the gross shipping weights prior to and at the time of rejection. The bill of lading showing the oriental shipping weights was received by the plaintiffs at San Francisco on February 25th. On the following day the representative of the plaintiffs called at the office of the defendant with the weight certificate and bill of lading showing the gross shipping weights and a surveyor's certificate showing the peanuts to be 30–32's and asked for shipping instructions, which were refused. Later on in the trial there was evidence that prior to the rejection the original bill of lading showing the gross shipping weights was inspected by a representative of the defendant. From this evidence the inference might also be drawn that the defendant had knowledge of such weights before its letter of rejection.

[7] Furthermore, the tender was made on March 8th and was rejected on March 11th. During the intervening time the defendant had full opportunity to ascertain from its agent in Seattle whether the amount specified in the invoice was excessive, and if so, to specify the correct amount so that the plaintiffs might obviate the objection by a corrected invoice. There was no showing of bad faith on the part of the plaintiffs in offering to perform. They were entitled to the presumption of good faith in the transaction. Under such circumstances, if the plaintiffs demanded something to which they were not entitled, they should have had the opportunity to recede from such demand. In the case of *Kofoed* v. *Gordon,* 122 Cal. 314 [54 Pac. 1115], it was said: "If the person offering to perform is acting in good faith, and makes the mistake of demanding something to which he is not entitled, he ought to be given the same opportunity to recede from such demand that he is allowed for tendering the correct amount where he has tendered too little, or the right thing where he has tendered the wrong thing. . . . This principle is the necessary basis of the numerous decisions in which it has been held *that an express objection to a tender upon one ground is as clearly a waiver of unauthorized conditions as of those objections not mentioned."* (Italics added.) See, also, *Hoover* v. *Wolfe,* 167 Cal. 337 [139 Pac. 794] ; 6 Cal. Jur. 412, and cases cited. [8] The principle of estoppel embodied in section 1501 of the Civil Code and section 2076 of the Code of Civil Procedure is generally recognized. (*Ohio & Miss. Ry. Co.* v. *McCarthy,* 96 U. S. 258 [24 L. Ed. 693, see, also, Rose's U. S. Notes] ; *Bank of Taiwan* v. *Union Nat. Bank,* 1 Fed. (2d) 65 and cases cited ; 2 Williston on Contracts, secs. 743, 744.)

[9] Defendant cites the cases of *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212 [9 Am. St. Rep. 199, 18 Pac. 248], in support of its contention that the ascertainment of the net landed weights was a condition precedent to a valid tender. But that case does not hold that weighing is necessary if the goods be otherwise identified. The court there quotes the following rule laid down by Mr. Benjamin: " 'Where anything remains to be done to the goods for the purpose of ascertaining the price, as by *weighing,* measuring, or testing the goods, where the price is to depend upon the quantity or quality of the goods, the perform-

ance of these things also shall be a condition precedent to the transfer of the property, *although the individual goods are ascertained,* and they are in the state in which they ought to be accepted.' (Benjamin on Sales, b. 2, c. 3)," and then goes on to say: "So far as concerns the proposition that where weighing or measuring is necessary *to the identification* of the goods, the title does not pass until they have been weighed or measured, the American cases are generally in accord with the above rule (cit. cas.). In California the cases are to the same effect (cit. cas.). Some of the American cases are not in accord with the rule laid down by Mr. Benjamin in this: that *if the goods are identified,* it does not matter that weighing or measuring is necessary to ascertain the price or the quantity. And this seems to be the law in California. For the Civil Code contains the following: 'Sec. 1140. The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, *whether it is separated from other things or not.'* This section does not dispense with identification. On the contrary, it requires it. It only dispenses with segregation when the property is otherwise identified. Therefore, where the identification consists in the segregation, weighing or measuring, they are still necessary. And the present case was of the latter character." There is no question in the case at bar as to the identity of the goods, irrespective of the weights or quality.

[10]    The defendant further contends that, under the contract, the plaintiffs were required to pay the import duty before they could be in a position to make a valid tender. It is unquestionable that the plaintiffs obligated themselves to deliver the merchandise free of duty. However, there is nothing in the contract as to when the duty should be paid. The defendant knew at the time of rejection that the goods were in a bonded warehouse and it was uncertain whether any duty would have to be paid until after shipping instructions had been furnished. If the terminal to be indicated by the defendant were domestic, the payment of the duty would, of course, be necessary in order that the goods be released from bond. But if the designated terminal were a foreign port or in a foreign country, which it might have been, no duty would have been required. Even though the

payment of duty by the plaintiffs were certain it was in evidence that, according to custom and usage under such a contract, the time of payment of the duty was when the shipping instructions had been furnished and the goods were withdrawn from bond and loaded for shipment to the terminal designated by the buyer. There was also evidence that, in the absence of such instructions, the demand for the purchase price would by custom and usage be made on the presentation of the delivery order, gross shipping weights and invoice and that when payment was made in accordance with the tender any difference in weights that might develop would become a matter of subsequent adjustment between the parties.

It satisfactorily appears that the parties to the contract contemplated that shipping instructions should be furnished by the buyer before the goods were placed f. o. b. carrier. The written contract is not as explicit on the subject as it might be, for it merely provides that the "seller reserves the privilege of routing all freight, but will give terminal delivery by line requested by buyer." This language might reasonably be said to import an obligation on the part of the defendant to designate the terminal at the appropriate time, but whatever uncertainty or omission occurs in the language of the contract is clarified and supplied by the evidence herein that, pursuant to custom and usage of the trade, unless otherwise specifically provided by contract, it was the duty of the buyer to furnish shipping instructions before the seller was required to pay the duty or ascertain the f. o. b. weights. [11] It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract. (*Brown* v. *Howard,* 1 Cal. 423; *Taylor* v. *Castle,* 42 Cal. 367; *Burns* v. *Sennett,* 99 Cal. 371 [33 Pac. 916]; *Union Ins. Co.* v. *American Ins. Co.,* 107 Cal. 333 [48 Am. St. Rep. 140, 28 L. R. A. 692, 40 Pac. 431]; 6 Cal. Jur. 315, and cases cited; *Miller* v. *Germain etc. Co.,* 193 Cal. 62 [222 Pac. 817].)

[12]    The defendant also contends that the form of the delivery order was insufficient; that it was an order by the plaintiffs at San Francisco on the plaintiffs at Seattle and was not accompanied by an assignment or other document which would enable the defendant to receive the goods without further action on the part of the plaintiffs, and that under the form of order submitted it still remained within the power of the plaintiffs to withhold the goods until the purchase price had been paid. It is not suggested that the plaintiffs were unable to do any of the things which it is claimed by the defendant they should have done to effectuate actual possession in the defendant. It was for the jury to determine on the evidence presented whether the plaintiffs were ready and willing to perform all things necessary to transfer actual possession. In addition there was no objection to the form of the delivery order in the defendant's letter of rejection. Therefore, any objection to the terms of the order were waived under the code sections above quoted. Also there was evidence that the delivery order here employed was in form in accordance with the custom and usage under similar situations.

The defendant earnestly insists that the present case is governed by the rules laid down in *Gopsevic* v. *California Packing Corp.*, 64 Cal. App. 132 [220 Pac. 1078]. That was an action to recover the purchase price of the entire crop of prunes grown by plaintiff on his orchard. The contract provided that the seller was to harvest, properly dry and cure the crop for the season 1920 and deliver the same to defendant. By the express terms of the contract title to the prunes was to pass to the buyer after *completion of weighing and payment,* and thereafter the crop was to be at buyer's risk. The plaintiff claimed to have properly dried and cured the prunes and made them ready for shipment, and to have offered to deliver the same in accordance with the terms of the contract, but that the defendant refused to accept them. The plaintiff claimed to have made an unconditional tender of the goods. There was neither allegation nor proof of an intent to pass the title at the time of the tender, nor was there allegation or proof of a waiver on the part of the defendant as to the sufficiency of the tender. The proof showed that the plaintiff insisted upon standing on the letter of his contract to the effect that payment should

be made at the time of delivery. It was held that the plain-
tiff had mistaken his remedy, was not entitled under the
pleadings and proof to maintain his action for the purchase
price but should have proceeded under section 3311 of the
Civil Code. Assuming the correctness of that decision, the
rules there laid down do not apply to the present case for
the reason that the allegations and proofs were not the
same. Numerous propositions of law, however, properly ap-
plicable to the facts in this case are there stated. It is said:
"The question of the passing of title being one of intention
of the parties, in the ascertainment of this intention resort
must be had to the terms of the contract, the conduct of the
parties and the circumstances of the case. The intention
being the governing principle, the question in the main is
one of fact. . . . If the seller transfers to the buyer the title
to the property sold, he may under section 3310 recover the
full purchase price. . . . If tender is made by the vendor
*with intent to pass title* in the goods to the vendee, title is
thereby deemed to have passed, and the vendor may sue for
the contract price (Civ. Code, sec. 1141). If tender is made
without intent to pass title until payment is made, title is
not deemed to have passed, and the situation is controlled
by section 3311." We are not impressed with the argument
of the defendant that the clause in the contract here in
question providing that payment should be made on "ar-
rival and inspection" is equivalent to a provision for pay-
ment upon delivery. Actual delivery in this case would take
place upon the placing of the goods f. o. b. carrier and
transmission of the bill of lading. [13] It is clear that
the intention of the parties was that when the goods had
arrived, been inspected by the defendant and found to be
in accordance with the contract, the purchase price would
be due and payable. This is not by its terms a cash-on-
delivery contract. The defendant argues that the plaintiffs
converted the same into such a contract by the submission
of an invoice at the time of the tender. We think the cir-
cumstances here shown, including the admitted fact that the
defendant had the delivery order in its possession from the
8th to the 11th of March, were sufficient to entitle the jury
to conclude that the plaintiffs had waived immediate pay-
ment as a condition to the transfer of the title.

[14]    Taking into consideration the terms of the contract, the evidence of custom and usage not inconsistent with those terms, the conduct of the parties, especially of the defendant in waiving objections which it might have interposed, and the other circumstances appearing in the case, it is concluded that the evidence was sufficient to support the findings of the jury implied from the rendition of the verdict.

It is contended by the defendant that the plaintiffs' pleadings are insufficient to justify recovery. It is suggested that the theory of the plaintiff's case is that the failure of the defendant to furnish shipping instructions was an excuse available to the plaintiffs for not performing the alleged conditions precedent under the contract. The plaintiffs allege full performance on their part and it is insisted that under the facts they should have alleged excuse for nonperformance if they expected to recover. The case of *Peek* v. *Steinberg,* 163 Cal. 127 [124 Pac. 834] is relied on. In that case the allegation was that the plaintiff had performed on his part. The proof did not show performance but did show excuse for nonperformance. The court said: ''Such an allegation will not justify a recovery on proof of a valid excuse for nonperformance. 'The rule is fundamental that the complaint must either allege performance or a valid excuse for nonperformance. One is not the same as the other.' '' But here full performance was alleged. Keeping in mind the waiver of objections to which the defendant committed itself, the proof showed a sufficient offer of performance on the part of the plaintiffs. [15]    Although the failure of the defendant to furnish shipping instructions might have justified the plaintiffs in proceeding on the theory of excuse for nonperformance, that circumstance did not prevent them from offering to perform and thereafter alleging performance.

[16]    The giving of certain instructions requested by the plaintiffs and the refusal of certain proposed instructions requested by the defendant are alleged as error. It is insisted that it was error to give that portion of instruction XXI to the effect that if the jury should find that the defendant failed to furnish shipping instructions when it was required to do so within a reasonable time after the arrival of the goods, and such failure delayed or prevented the

plaintiffs from performing their obligations under the contract, then the plaintiffs were excused from performing such obligations to the extent that they were so delayed and prevented by the act of the defendant. The case of *Peek* v. *Steinberg, supra,* supports defendant's contention that when full performance is alleged and excuse for nonperformance is not alleged such instruction is error. But it cannot be said that the defendant's rights were prejudicially affected by the instruction in view of the fact that the court properly instructed the jury as to the necessity of proof of full performance before a recovery could be had, and that in the absence of such proof by a preponderance of the evidence the verdict must be for the defendant.

[17] Instruction No. VIII, given at the request of plaintiffs, was to the effect that if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it was the duty of the jury to draw the inference favorable to fair dealing. The defendant contends that this instruction was ambiguous and misleading; that it may have been misconstrued by the jury as intending to indicate that in the opinion of the court one of the parties had dealt fairly and the other had favored corrupt practice. We do not think the instruction is subject to the criticism offered. It was a correct exposition of the law on the subject. (*Ryder* v. *Bamberger, supra,* and cases cited.)

[18] Complaint is made of the modification of instruction No. V proposed by the defendant whereby the clause "and that the burden of proof is upon plaintiffs to establish that fact by a preponderance of the evidence" was stricken out. But elsewhere in its charge the court fully instructed the jury as to the burden of proof and the preponderance of evidence.

The defendant criticises other instructions given as proposed or given as modified. They have been examined and are found to be not subject to the objections interposed. Complaint is also made that numerous instructions proposed by the defendant were not given. They constitute an exposition of the law from the defendant's point of view and, where applicable to the facts, were covered by instructions given.

There was no error in denying the defendant's motion for a nonsuit, for reasons hereinbefore stated. There was no error in admitting evidence of custom and usage as the facts developed during the course of the trial. [19] The application to file the second amended complaint to conform to the proofs was addressed to the sound discretion of the trial court, and no abuse of that discretion is shown. No prejudicial error appears from any instruction given or refused. The jury found on sufficient evidence that it was the intention of the plaintiffs to pass the title to the goods at the time the tender was made. The defendant had the opportunity at the time of rejecting the tender to specify all of the objections which it did not then specify but which it later insisted upon. If those objections had been made at the opportune time they were of such a character that they could have been obviated by the plaintiffs as contemplated by the statute. Since they were not so made, they were waived.

The judgment is affirmed.

Waste, J., Richards, J., Lawlor, J., Seawell, J., Lennon, J., and Myers, C. J., concurred.

Rehearing denied.