ELIZABETH A. REILLY, Respondent, v. WATERSON, BERLIN & SNYDER COMPANY, Appellant.

First Department, July 14, 1922.

Contracts — action to recover minimum royalties for exclusive use of photograph and autograph of plaintiff's assignor on songs to be published by defendant — complaint dismissed — failure to allege actual sale by defendant — plaintiff's assignor violated agreement for exclusive use and thereafter induced defendant to continue performance by promise which she failed to keep.

In an action to recover specified installments of the minimum royalties provided for in a contract for the use by the defendant of the photograph and autograph of the plaintiff's assignor, brought before the expiration of the contract, the complaint should be dismissed, where it appears that under the contract the defendant was to have the exclusive use for the period of one year of such photograph and autograph to be printed on the cover pages of three songs to be published by it based on motion picture plays produced by the plaintiff's assignor, one of which songs was entitled "Daddy Long Legs;" that there is no allegation to the effect that any of the songs had been actually sold by the defendant; that, in violation of the contract to the damage of the defendant, the plaintiff's assignor sold to a rival of the defendant the right to use her photograph and autograph, during part, at least, of the same period, on the cover page of a song published by such rival under the name " Dear Old Daddy Long Legs," which song was also based on the play produced by plaintiff's assignor, and that defendant was induced by a promise which was not kept to continue performance after such violation.

APPEAL by the defendant, Waterson, Berlin & Snyder Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of March, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 29th day of March, 1921, denying defendant's motion for a new trial made upon the minutes.

*Thomas F. MacMahon* [*Charles H. Tuttle* and *Carl E. Peterson* with him on the brief], for the appellant.

*O'Brien, Malevinsky & Driscoll* [*Arthur F. Driscoll* and *Dennis F. O'Brien* with him on the brief], for the respondent.

LAUGHLIN, J.:

On the 13th day of May, 1919, Gladys Mary Moore, known as Mary Pickford, and the defendant entered into a contract in writing by which Miss Pickford gave to the defendant the exclusive use for one year of her photograph and autograph to be used on the cover pages of three songs to be published by it based on motion picture plays produced by her; and the defendant in consideration thereof agreed to pay to her specified royalties on each copy of the songs sold or used as contemplated by the contract; and it guaranteed that the minimum royalties to be paid with respect to each song should be $2,500 to be paid in installments as therein provided within one year from the date of the first publication thereof; and on the 12th of March, 1920, Miss Pickford assigned to the plaintiff all her right, title and interest in any claim that she might have against the defendant under and by virtue of her agreement with it; and the plaintiff on the 24th of March, 1920, brought this action to recover specified installments of the minimum royalties alleged to have become due and owing with respect to three songs alleged to have been published by the defendant using the photograph and autograph of Miss Pickford thereon: " Daddy Long Legs," " The Hoodlum," and " Heart of the Hills," aggregating $5,500 with a credit of $2,500. The complaint was amended on the trial by extending it to another installment of the minimum guaranty of $500, which became due before the commencement of the action, but was not included in the complaint, and by giving a further credit of $1,068.13. The complaint contains no allegation to the effect that any of the songs had been actually sold by the defendant, but the plaintiff alleges that Miss Pickford " duly performed all conditions on her part in said contract to be performed." The answer of the defendant put in issue the material allegations of the complaint and pleaded two defenses and one partial defense. The first defense is to the effect that Miss Pickford, in violation of her agreement contained in the contract not to authorize the use of her name and photograph upon any song for the period of one year from the date of the contract, authorized the use of her name and photograph upon a rival song, known as " Dear Old Daddy Long Legs," published by the Broadway Music Association, a competitor of the defendant; and that said song was circulated and sold by said association as derived from or based upon the motion

First Department, July, 1922.     [Vol. 202

picture produced by Miss Pickford, known as " Daddy Long Legs," referred to in her contract with the defendant, and in which she portrayed the leading role, and with respect to which, by said contract, she gave to the defendant the exclusive right for said period of one year to use her photograph and autograph upon the cover page of a song known as " Daddy Long Legs," which it was about to publish at the time the contract was made.   The defendant further alleges in that defense that, at great expense, it caused the song " Daddy Long Legs " to be written and published; and that, in consequence of Miss Pickford's said breach of the contract, the defendant was compelled to expend large sums of money, which would have been unnecessary if she had not consented to the use of her photograph and autograph on the rival songs; and that the sales of the song by the defendant were greatly reduced in number, and it sustained a considerable loss of profits by reason of said breach of the contract by Miss Pickford; and that prior to such breach by her the defendant fully performed the contract on its part; and that by reason of said breach there was a failure of the essential consideration by which the defendant was induced to make the contract, and it sustained damages in excess of $3,000. In the second defense the allegations of the first defense are repeated, by reference, and it is alleged that, by reason of the facts, the defendant has sustained damages in a sum considerably in excess of $3,000.   In the partial defense, payments are alleged to have been made to the plaintiff's assignor, aggregating $3,568.13.

Plaintiff proved the contract between Miss Pickford and the defendant and a stipulation by the attorneys was put in evidence showing the dates of the first publication of the songs by the defendant as follows: " Daddy Long Legs," May 27, 1919; " The Hoodlum," September 4, 1919; " Heart of the Hills," November 29, 1919; and the royalties which had accrued on the song " Daddy Long Legs " down to and including the 31st of December, 1919, at the rate specified in the contract, amounting to $2,597.69.   Although on the theory of the complaint, which plainly is for the minimum royalties, the aggregate of the actual royalties was immaterial, it was essential for the plaintiff to show the date on which the defendant commenced the publication of each of the songs, which evidently was the primary purpose of the stipulation; and when this stipulation, showing in addition thereto the aggregate of the actual royalties, was offered in evidence, there was no suggestion that the plaintiff intended thereby to change the theory of her cause of action, and the complaint was not amended and no motion to amend it was made.

The defendant showed that Miss Pickford, on the day after she

made the contract with it, executed a formal agreement with the Broadway Music Corporation, whereby in consideration of royalties to be received therefor, she authorized that corporation to use her photograph and autograph on the cover page of a song to be published by it under the name of " Dear Old Daddy Long Legs " which was likewise based on the play produced by her. It is proper to observe, although it is not material to the decision of the appeal, that the contract with the defendant was negotiated by Miss Pickford's attorney and made by her mother; and that she was not aware of its terms when she contracted with the Broadway Music Corporation; but her mother was authorized to make it and she has since ratified it. The defendant offered evidence to show that Miss Pickford, down to the 28th of February, 1920, received for royalties under her contract with the Broadway Music Corporation the sum of $2,020.15, on the ground that it was entitled to offset that amount against the damages claimed; and also that it showed that Miss Pickford, after acquiring full knowledge of the making of the contract with the defendant, continued to recognize and authorize the contract which she made in violation thereof. The court limited the reception of the evidence to the latter use. The defendant further showed, in effect, that after it discovered that the Broadway Music Corporation was publishing the song " Dear Old Daddy Long Legs " with Miss Pickford's photograph and autograph, it remonstrated with the attorney for Miss Pickford, who had negotiated the contract with it; and that it was then agreed by him in behalf of Miss Pickford that the defendant should have the next picture released for Miss Pickford for a picture song, to compensate it for its loss and for the competition to which it had been subjected with respect to " Daddy Long Legs; " and that it would be as popular a picture as " Daddy Long Legs; " and that later on it was agreed that this picture should be " Pollyanna; " that defendant acquiesced, and on that agreement continued the publication of the three songs; but that about the 28th of November, 1919, Miss Pickford's attorney advised the defendant that she would be unable to give it the " Pollyanna " picture for the reason that the publisher of Pollyanna had reserved the song rights; that after that the defendant made no further payment under its contract with Miss Pickford, but continued to publish and sell the songs; and that the last payment made by it to her was on the 17th of November, 1919. Down to the time of the trial the defendant had published and sold about 480,000 copies of the song " Daddy Long Legs; " and it offered to show that the Broadway Music Corporation had published and sold down to December 31, 1919, 414,210 copies of " Dear Old Daddy Long Legs; " but the

evidence was only received for the limited purpose stated with respect to royalties received by Miss Pickford from that company. The defendant also offered evidence to show the profits made by the Broadway Music Corporation on its publication and sales of the song "Dear Old Daddy Long Legs" and the loss of sales by the defendant to phonograph and piano player companies, which it had a right to make under its contract with Miss Pickford, and on which she was to receive a specified royalty, but with respect to which the phonograph and piano player companies refused to contract on account of the publication of the other song; also to show the expenses incurred by it in meeting competition and in advertising its exclusive right, which became necessary owing to the advertising campaign conducted by the Broadway Music Corporation and Miss Pickford's failure to withdraw her license to that company; and by expert testimony, the value of the defendant's contract with its exclusive right intact and with it impaired — all of which evidence was excluded as too uncertain and indefinite.

At the close of the evidence defendant moved for the direction of a verdict and for judgment on its offset; and on those motions being denied, it excepted and asked leave to go to the jury on all of the issues and particularly as to whether it had not suffered damages through the making of the other contract, whether it had waived any of its rights by continuing to publish the songs, and as to whether the plaintiff's assignor had fully or substantially performed. The requests were denied and defendant excepted. The plaintiff then moved for the direction of a verdict for the installments of the minimum guaranty, aggregating $2,500, together with interest thereon from the dates when they were payable under the contract. The motion was granted and the defendant excepted. Counsel for the defendant then drew the attention of the court to the fact that the verdict was too large by $68.13, as it allowed a credit of only $1,000 for the last payment, which was $1,068.13; whereupon the attorney for the plaintiff stated that the stipulation showed that the actual royalties which accrued under the contract exceeded by $97.69 the amount claimed for minimum royalties, and that, therefore, more than offset the $68.13. The court overruled the defendant's claim and received the verdict on the basis of the plaintiff's motion.

Unless the complaint is to be deemed amended by the receipt in evidence of the stipulation with respect to the actual royalties on the sales of the songs by the defendant so as to change the cause of action from one for a balance of minimum royalties into one for the actual royalties on the songs published and sold by the defendant, I am of opinion that the plaintiff's complaint should have been

dismissed on the ground that the cause of action alleged is on the theory of full performance by Miss Pickford and to recover the installments of minimum royalties, with no allegation that any of the songs had been sold or published by the defendant, and that it conclusively appeared that Miss Pickford was guilty of a breach of the contract which deprived her of any right to recover thereunder without alleging and proving the waiver of the breach by the continuation of the publication and sales of the songs after knowledge thereof. Plaintiff cites in support of her claimed right to recover on this theory without alleging or proving a waiver, *Rosenthal P. Co.* v. *National Folding B. & P. Co.* (226 N. Y. 313). That action was in many respects similar to this, but it differed on what I deem one distinguishing feature. The plaintiff's assignor licensed the defendant to use a patent for five years on a royalty basis, by which the licensor agreed to protect the licensee against infringements and in the exclusive right to manufacture and sell; and without the knowledge of the licensee, until after the expiration of the five-year period, the licensor assigned the patent, thus putting it out of its power to perform its obligation to protect the licensee with respect to infringement and exclusive use. That contract, like this, provided for the payment of actual royalties with a minimum guaranty. The actual royalties were paid, but the minimum royalties guaranteed exceeded the amount thereof, and the action was brought by the assignee to recover the difference. The complaint there, as here, alleged that the assignor fully performed; but it appeared that the defendant had enjoyed the full benefit of its contract without any interference with its exclusive rights thereunder; and the court, although adhering to the general rule that such an action could not be maintained without an allegation and proof of performance, and holding that those were dependent covenants and conditions precedent to a right to recover any of the royalties, allowed a recovery, on the ground that the defendant had suffered no injury or damages from the technical violation by the assignor of its contract in thus assigning the patent and incapacitating itself from ability to protect the licensee in the event that such protection became necessary, and that defendant's right of rescission for the breach was not exercised and regardless of the fact that it had no knowledge of the breach until the contract terminated, could only be exercised during the life of the contract, and that, having enjoyed the fruits of the contract, it could not lawfully refuse to pay the royalties. The case at bar is quite different. This action was brought before the expiration of the contract year during which the defendant was to be given the exclusive right to the use of Miss Pickford's picture and

autograph on the song " Daddy Long Legs," and the contract has not been fully performed by either party, and defendant was induced by a promise which was not kept to continue performance, and plainly sustained damages resulting from Miss Pickford's violation of the contract. It seems quite clear to me that Miss Pickford could not have maintained an action for the minimum royalties.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.