EDWARD S. PHILLIPS *vs.* UNIVERSAL UPHOLSTERING COMPANY.

Suffolk.    March 17, 1924. — April 8, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Contract,* Of employment, Modification, Performance and breach.

Under a contract in writing whereby a corporation appointed a salesman its " sole sales agent " for its goods and agreed to pay him ten per cent of its gross sales, and the agent agreed that he would " undertake (but does not guarantee) to market the entire product of the " corporation, the agent, after the contract has been terminated by abandonment on his part and assent thereto by the corporation, is not precluded from recovering a full ten per cent of the gross sales made while the contract was in force by reason of the fact that he assented to the employment by the corporation of additional salesmen, if it does not appear that any agreement was made between him and the corporation that his commission should be lessened by reason of such employment; nor did an acceptance by him of sums given him by the corporation as commissions as a matter of law constitute a waiver by him of a right to insist upon payment of the full amount due under the provisions of the contract, although, trusting to the contract, he did not insist upon his right to examine the books of the corporation to verify its computations.

Under the contract above described, the corporation agreed to pay the agent, in addition to a commission, a certain proportion of the expenses of maintaining a salesroom or showroom at a designated location, and the agent agreed that he would display the corporation's goods " at said premises . . . now leased by him upon the condition stated." An auditor, who heard an action by the agent for commissions in accordance with the contract, found, " No question is raised in this case about the . . . salesroom . . . I find that the contract was in force " to the time when it was terminated by abandonment on the part of the plaintiff and assent thereto on the part of the defendant, " and the plaintiff is entitled to recover compensation according to its terms." At the trial before a jury, there was no evidence controlling the above findings by the auditor. *Held,* that a request for a ruling by the

defendant that, if the jury found that the defendant employed other salesmen and that the plaintiff gave up the showroom, such conduct amounted to such a substantial departure from the contract as to amount to a revocation, and that the plaintiff could not recover on the contract, properly was refused.

CONTRACT upon an agreement in writing relating to the employment of the plaintiff by the defendant. Writ dated June 1, 1922.

In the Superior Court, the action was referred to an auditor. The auditor in his report found: " No question is raised in this case about the Canal Street salesroom in Boston . . . I find that the contract was in force from March 15, 1921, until May 1, 1922, and the plaintiff is entitled to recover compensation according to its terms."

The contract in writing contained, besides the passage quoted in the opinion, the following provisions relating to the nature of the plaintiff's employment: " The company, in consideration of the services to be performed by the said Phillips and benefits to be derived hereunder, hereby constitutes and appoints the said Phillips its sole sales agent and agrees to give him the exclusive selling rights of all products manufactured or marketed by it on a ten per cent. (10%) commission basis of gross sales . . . And in consideration of such payments to be made to him the said Phillips agrees with the company that he will undertake (but does not guarantee) to market the entire product of the company provided it will maintain the quality of its goods and fix fair competitive prices therefore [*sic*], and that he will display its goods at said premises No. 114 Canal Street now leased by him upon the condition stated."

There also was the following provision as to the showroom on Canal Street: " The company further agrees, and in addition to the commission to be paid as aforesaid, to pay to the said Phillips towards his expenses in maintaining a salesroom or showroom at 114 Canal Street in said Boston the sum of seventy-five dollars per month until March 1, 1923, and thereafter (unless this agreement shall have been terminated and until such termination) said sum plus its proportional share of any increase in rent after said date, payable

in advance on the first day of every month, such payments being an account of rent, and further to pay monthly its proportion of other expenses of upkeep and maintenance thereof."

Upon the filing of the auditor's report, the action was tried before *Callahan,* J.   The record disclosed no evidence other than the findings by the auditor above described.   Material evidence and rulings by the trial judge to which the defendant alleged exceptions are described in the opinion.   There was a verdict for the plaintiff in the sum of $2,690.94.   The defendant alleged exceptions.

The case was submitted on brief.

*J. B. Jacobs, P. W. Jacobs & H. G. Jackson,* for the defendant.

The plaintiff submitted the case without argument or brief.

WAIT, J.   The contract of employment provided that the plaintiff should be sole sales agent with exclusive selling rights of all the defendant's products, and that he undertake, but not guarantee, to market its entire product.   It further provided that it should remain in force for one year from its date and thereafter from year to year unless terminated at the end of any year by either party, notice of intention to terminate being given by the moving party not later than February 15 of any year.

It fixed the plaintiff's compensation at " ten per cent. (10%) of its gross sales during the term of this contract, such sales to include all orders for goods which may be received by the company or solicited by said Phillips before the termination of this agreement and subsequently delivered and billed by the company."   Phillips was not required to share in " discounts made by the company . . . whether on sales made by the said Phillips or sales made directly by it."   The company was to pay " on the first Monday of every month during the term of this agreement a sum equivalent to ten per cent. of its gross sales during the proceeding [*sic*] month, i. e. gross amount of invoices of goods shipped or delivered determined as aforesaid, and to pay any balance which may be due him on termination of

this agreement within ten days thereafter, or in event of any dispute as to such balance within five days after the amount in dispute shall be determined. The company shall furnish to the said Phillips every such Monday a complete statement of such sales for the preceding month upon which the amount due him is reckoned and shall open its books to him at his convenience and within reasonable business hours to allow him to verify such statements. Correction of any errors shall be promptly made and any balance found to be due from either party at any such audit shall be paid by the debtor party within five days."

The contract was dated March 14, 1921. The sales made by Phillips were not as great as desired, and, with his assent, two other salesmen were, later, set to work and paid by the company. The defendant claimed, but the plaintiff denied, that Phillips agreed that if the company paid these men, he would not expect also to be paid. The defendant made Phillips each month a statement of the sales made by him and gave a check corresponding with the statement. He did not examine the books to see whether he was being paid in accord with the contract, but took the check, trusting to the contract. The contract was terminated May 1, 1922, by abandonment on the part of Phillips and agreement thereto by the defendant. The total sales during the period the contract was in force were $54,196.50; and the amount paid to the plaintiff, instead of $5,419.65, was $2,881.03. In June, 1922, he began this suit for the balance.

In its answer the defendant claimed that the contract had been modified by consent so that the plaintiff was to be paid only for his personal sales and that the plaintiff had been paid in full; that by accepting the payments made, by failing to make objection to the statements furnished, and to make request for statements of the entire business done by the defendant, he had waived the provision for payment of ten per cent of the entire business; and that he had abandoned the contract.

The case was sent to an auditor who reported in favor of the plaintiff, and was then tried to a jury upon the auditor's report and further evidence. The jury were warranted in

finding the facts as stated in this opinion. The auditor reported: "No question is raised in this case about the Canal Street sales room in Boston."

The defendant moved that the judge direct a verdict for the defendant, and, on his refusal, requested an instruction to the jury that, "If the jury finds that the defendant employed other salesmen and that the plaintiff gave up the showroom on Canal Street, such action and conduct amounts to such a substantial departure from the contract as to amount to a revocation and the plaintiff cannot recover on the contract." The judge refused to give the instruction. The jury found for the plaintiff, and the defendant claims exceptions to the denial of the motion to direct a verdict, and to the refusal to instruct as prayed in the request.

There is nothing in the exceptions. While it may be that the defendant might have terminated the contract if the plaintiff was not performing what he undertook, as matter of fact it did not put an end to the contract. So long as the contract was in force, the plaintiff was entitled to payment in accord with its terms. He did not break the contract by not keeping a salesroom open, if, indeed, he gave up such a room. The contract does not require that he shall maintain the room. The evidence fully justified a finding that the plaintiff did not waive the provisions for payment. He did not put an end to the contract by assenting to the employment of other salesmen. Nothing in the contract so requires. The abandonment, by conduct of both parties, did not preclude his claim for compensation according to the terms of the contract for the period that it remained in force.

There was nothing in his action and conduct that, as matter of law, amounts to a revocation of the contract, or that defeats a recovery. The judge was right in both rulings.

*Exceptions overruled.*