(No. 5735.   April 8, 1932.)

WALTER HARVEY WEED, Respondent, v. IDAHO COPPER COMPANY, a Corporation, Appellant.

[10 Pac. (2d) 613.]

738

Carey H. Nixon, for Appellant.

George Donart, for Respondent.

GIVENS, J.—Respondent's first cause of action is for an unpaid salary balance for personal services, and the second for reimbursement for expenses incurred by him in such employment. The complaint alleged in substance respondent's employment at a yearly salary of $15,000, or $1,250 per month, and a balance of $7,500 thereof, due and unpaid, and that plaintiff had "duly complied with the terms of the contract." Appellant denied that respondent had performed the contract; denied he was entitled to reimbursement; and while the answer denied employment as alleged by respondent, the affirmative portion of the

answer sets up at length and in substance the terms of a contract, Plaintiff's Exhibit "A," with respect to plaintiff's employment, and also portions of the minutes of appellant corporation, the pertinency of which appear as we proceed.

Three principal items of money are involved: 1. The claimed salary balance of $7,500; 2. An item of $400 respondent contends he paid to one H. G. Mitchell, a mining engineer of Salt Lake City, for a report made by Mitchell on certain features of the mining properties hereinafter described; and 3. The expense account of respondent.

The verdict was for the full amount asked, less $400, which respondent opines the jury deducted on the theory that he was not entitled thereto because paid to Mitchell by appellant, not respondent. Appellant contends, on the other hand, that the jury deducted it from the salary claimed by respondent. Under either view appellant was not prejudiced by the deduction; hence it is unnecessary to further consider or discuss this $400.

The Idaho Copper Company, originally called the Idaho Copper Company, Limited, owned the Red Ledge group, Red Ledge West Extension group, and the Mammoth group of lode mining claims in the Seven Devils District, Adams county, Idaho. The Idaho Copper Corporation, an entirely different organization, owned the Iron Dyke property and the South Peacock, in the Seven Devils District of Idaho and Oregon.

April 7, 1926, a contract, Plaintiff's Exhibit "A," was entered into between Cooley Butler, individually, and as trustee for certain parties, including O. H. Griggs, who owned the controlling interest in the Idaho Copper Company, and Frank Silva, brother-in-law of George Graham Rice, who, with his associates, owned a controlling interest in the Idaho Copper Corporation, it being conceded that Silva was a "dummy" and George Graham Rice was the real party in interest, and represented Rice in the contract, the contract being generally for the purposes, as expressed

in the minutes of appellant corporation, Plaintiff's Exhibit "C," as follows: "relating to the exchange of stock in the Idaho Copper Company, Limited, for all outstanding stock of the Idaho Copper Corporation, and the merger of the two companies, the raising of funds by the sale of treasury stock of Idaho Copper Company, Limited, for the opening up, development, and operation of its properties, the pooling of the stock owned by the parties of the first part, defining the methods of development, the officers of the company, and the policies to be followed," this contract being at said meeting of appellant corporation, April 7, 1926, thus adopted by it:

"Be it resolved by the stockholders of the Idaho Copper Company, Limited, that the said agreement between Cooley Butler, individually and as Trustee, of the first part, and Frank Silva, of the second part, be, and the same is, hereby approved, ratified, confirmed and adopted, in the same manner as if the corporation had been a party thereto. Be it further resolved that the Board of Directors and proper officers of the company be, and they are, hereby authorized and directed to make, execute and deliver, in the name of and in behalf of this company, all necessary legal documents, stock certificates, escrow agreements, or otherwise, and to do, and perform each and every act and thing necessary or proper to be done to put said contract hereinbefore referred to into full effective legal operation. Be it further resolved that by the approval, ratification and adoption of said contract the corporation expressly binds itself and its officers and directors by and to all of the limitations upon the corporate, executive or administrative functions or powers as in said contract set forth. President Griggs then presented to the meeting for consideration a new code of By-Laws, which had been drafted to meet the changed conditions arising under the contract between Cooley Butler, individually and as Trustee, and Frank Silva. The Secretary read the draft of By-Laws section by section, and the members present discussed the same. Thereupon the

following resolution was offered by Mr. Butler and seconded by Mr. Kennedy, and, upon being put to vote, was adopted by the unanimous vote of all the stockholders present.''

The contract between Butler and Silva, Plaintiff's Exhibit ''A,'' provided with regard to respondent as follows:

''The mining management of the properties of the Company shall be in charge of Dr. Walter Harvey Weed, who shall be known as General Mine Manager, Consulting Engineer and Geologist and shall continue in office as long as his services are satisfactory to the party of the second part hereto. In the event of his noncontinuance in office, second party hereto shall have the right to name his successor who shall be subject to the approval of the party of the first part hereto, or his successor.''

The contract also provided that respondent should be vice-president and a director of appellant company. This contract was carried into effect and the necessary by-laws adopted at a meeting on April 8, 1926, as shown by Plaintiff's Exhibit ''E.''

August 9, 1926, the scope of respondent's employment was thus modified in Plaintiff's Exhibit ''F'':

''Now, therefore, be it resolved, that from and after this date, Dr. Walter Harvey Weed, be relieved from active duties as General Mine Manager, the same to be assumed by Mr. Cooley Butler, and Dr. Walter Harvey Weed is directed to utilize his activities in connection with the geology and the ore location and development of the mineral properties of this Company as hereinbefore outlined; and

''Further resolved, that nothing herein contained shall be construed to change or affect the status of Dr. Weed as outlined in the contract of April 7th, 1926, by and between Cooley Butler, individually and as Trustee, party of the first part, and Frank Silva, as party of the second part.''

By the terms of the contract, Plaintiff's Exhibit ''A,'' respondent was to enter upon his duties for appellant in April, 1926, which he did; but his pay until September.

1926, was to come from the Idaho Copper Corporation, after which date appellant was to pay him. By April 18, 1927, respondent had received from appellant $7,500, or an amount equal to his salary for the first six months of the year between September 21, 1926, and September 21, 1927. As pointed out by appellant in his reply brief, this amount was not all paid at once or in a lump sum, but parts of it were paid from time to time.

Certain provisions of the contract, Plaintiff's Exhibit "A," and action thereunder by officers of appellant company with regard to stock which was to be given ultimately to respondent, though first escrowed, and the voting power thereof given to Silva, are not involved in this action. No point is made relative thereto, though there is some evidence in the record regarding the same. Appellant assigns as error the instruction of the court telling the jury to disregard the stock and any question connected therewith. The instruction was correct, as that matter is of no moment herein, and so virtually conceded during the trial by appellant.

"Mr. Smith (Counsel for appellant): We are not concerned about the stock at all and I don't think there is any dispute between us as to the stock.

"The Court: In other words, you don't claim the defendant company has violated the contract to you on non-delivery of the stock?

"A. (Mr. Weed.) No.

"Mr. Smith: That is all I wanted to clear up, your Honor."

The assignments of error group themselves as follows: Assignments 1 and 2 are general, and are disposed of by the discussion hereinafter indulged in with regard to the other assignments. Subdivisions (a) and (b) of Assignment No. 3, are in effect denials of the contract having been made as plead by respondent. Appellant in its answer avers that a contract subsequent to Plaintiff's Exhibit "A" was to be entered into between respondent and appellant, and that such separate contract was in fact never made, thus

challenging the portion of respondent's complaint as to this feature of the case. Such difference, however, is one of form and not substance, since appellant's answer contains the minutes of appellant corporation showing complete ratification and adoption of Plaintiff's Exhibit "A," which explicitly carried into effect the employment of respondent, who at least, even according to appellant's pleadings, entered upon his employment, and appellant paid him for six months thereof, and never discharged him, and, except as to the main bone of contention, performance, all parties recognized in effect as operative, the contract of employment contemplated by Plaintiff's Exhibit "A," though a separate subsequent agreement was not, as such, drawn up or signed by the parties. Thus there is no real difference in the contract as plead by appellant in the affirmative answer and the ultimate facts as plead by respondent in this particular. "An admission made in a pleading is binding on the party making it." (*Smiley v. Smiley*, 46 Ida. 588, 594, 269 Pac. 589.)

Subdivision (c) of Assignment No. 3 raises only the question of due performance. The original contract was modified, and respondent was relieved of his duties as mine manager. Otherwise there is no question that respondent, aside from the question as to whether the contract was performed in accordance with the terms thereof, did act as geologist, consulting engineer, etc. This assignment of error, therefore, hinges upon the sufficiency of the evidence to show compliance, which will be considered hereafter in connection with subdivisions (d), (e), (g), (h) and (i) of Assignment No. 3.

Subdivisions (f), (g) and (m) of Assignment No. 3, and Assignments Nos. 4, 5, 6, 7 and 16, deal with the sufficiency of the evidence to support the second cause of action. There was no error in Instruction No. 13, referred to in Assignment No. 16, made with reference to the reception of evidence in connection with respondent's account. (*Pomeroy v. Gordan*, 25 Ida. 279, 137 Pac. 888.)

Appellant concedes that the law embodied in Instruction No. 13 is correct, but contends it does not apply unless the court "is convinced that respondent's alleged expenditures were made while he was engaged in the service and work of his employer and were reasonably incidental thereto," citing 39 C. J. 161. It was for the jury to be satisfied on this point, and the instruction carefully so provided, viz.:

" . . . . If you find from the evidence that moneys to this amount, or any part thereof, were reasonably and necessarily expended by plaintiff on behalf or in the interest of defendant while plaintiff was engaged in the performance of his work under said contract of employment," . . . . etc.

As to Assignments Nos. 4, 5, 6 and 7, respondent by the contract, Plaintiff's Exhibit "A," was not entitled to claim any expenses prior to September 21, 1926, and the trial court is directed to strike from the judgment those items of expense incurred prior to September 21, 1926.

Assignment No. 3, subdivision (j), involves the controversy as to whether respondent, when in New York City for Rice, in connection with an action against Rice, to which action appellant was not a party, was performing any duty under his contract of employment, and will be considered hereafter in connection with Assignments Nos. 11, 14 and 15.

Assignment No. 3, subdivision (k), is closely connected with subdivision (c) of Assignment No. 3, and is of no moment, since appellant conceded respondent's employment as such, aside from the question of due performance, began September 21, 1926, viz.:

"Mr. Smith: I am willing to concede this that Doctor Weed was paid in so far as this defendant is concerned from, or begun September 21st, 1926."

And the record shows the employment terminated September 21, 1927.

"Mr. Smith: Mr. Hallock, I want to get the record clear. Mr. Weed has testified his services extended to the Receivership and that Receivership took place in November, 1927.

As I understand he is suing for services to September 21st, 1927.

"Mr. Hallock: That is correct.

"Mr. Smith: In other words, the contract that he is suing on here is a contract covering his services for the period of one year?

"Mr. Hallock: Well, that doesn't appear, Mr. Smith, from the record. I am going to produce the Minutes in any event, so that there will be no misunderstanding. We are not claiming in this action beyond September 21st, 1927."

■ Assignment No. 8, predicated upon the admission, over objection, of evidence showing the salaries of the other officers, is without merit. It is not shown how the admission of evidence of the salaries of other officers of appellant company prejudiced appellant; furthermore, Plaintiff's Exhibits "A," "E," "F" and "G," all of which showed the salaries of all the officers, including respondent's, were admitted without objection from appellant, and appellant was accorded the right to fully and completely cross-examine as to such salaries, as indicated by respondent's statement on cross-examination, that in certain previous employment with Mr. Rice he had received a salary of $50,000 a year.

Instructions Nos. 5 and 7, noted in Assignments Nos. 10 and 12, follow the allegations of the answer, paragraphs 4 and 5, and were therefore not improper. No sufficient showing is made that the trial court abused his discretion in refusing to submit the special interrogatories urged in Assignment No. 17. (*Tsuboi v. Cohn*, 40 Ida. 102, 113, 39 A. L. R. 851, 231 Pac. 708.)

■ At the conclusion of the trial, after the jury had retired to deliberate, they returned into open court, and the following took place:

"The Court: The bailiff informs me, Mr. Foreman, that the jury wanted some additional information, or instruction.

"Juror: The question came up and we couldn't find it in the instructions that should we find for the plaintiff, on the cause, the first cause of action, whether we would have to find for the full amount, or whether we should fix the amount. . . . .

"The Court: You have no objection to my giving this instruction orally and the reporter taking it, have you?

"Mr. Smith: No.

"Mr. Hallock: None whatever, your Honor.

"The Court: The jury are instructed in answer to the question just propounded by your foreman that this is not a suit to recover the reasonable value of services. The plaintiff alleges in his complaint that the defendant contracted to pay him a specific amount per annum, or per month, and the jury would not be warranted under that contract to allow an award to the plaintiff for a sum less than they contracted for. In other words, if the plaintiff complied with his contract he is entitled to the pay which the defendant promised to give him. If he didn't do so, he wouldn't be entitled to recover. The jury wouldn't be permitted in other words to say that while the defendant contracted to pay the plaintiff $1250.00 per month, that if you think the service he rendered was worth $500.00 to find in that amount. The question for the jury to determine first is whether or not the plaintiff substantially complied with the contract by rendering the services which he contracted to render for the defendant, and if so, whether he should be paid for those services at the rate stipulated in the contract. However, if the services were not rendered for the full period, the jury would be justified in allowing the plaintiff compensation at the rate of $1250.00 per month, for the time actually served. Does that answer your question?

"Juror: Yes."

Appellant, under Assignment No. 18, challenges this instruction on the ground that the contract was entire for a year's period at $15,000 per year, and was not severable, and cannot be divided into monthly periods at $1250 per month. Plaintiff's Exhibit "A," the basis of respondent's payment, provided as follows:

" . . . . (respondent) shall continue in office as long as his (Weed's) services are satisfactory to the party of the second part (Silva *ergo* Rice) hereto."

Respondent's complaint is not framed on a basis of an indivisible contract for a year, but for $7,500, the balance of his salary from September 21, 1926, to September 21, 1927, at the rate of $15,000 per year, or $1,250 per month. Paragraph 2 of appellant's affirmative answer does not allege an annual indivisible contract for the term of one year, but summarizes the contract, Plaintiff's Exhibit "A," showing the salary to be $15,000 per year, respondent to continue in office as indicated above, during the satisfaction of Silva. The three-year period of employment was the basis for the escrowing of stock to be given Weed, and if considered in this instance, as fixing a term of employment, has been abandoned, as such, by both parties hereto, and that portion of the agreement provided that if Weed served less than three years, the stock payments should be apportioned "to the time actually served," clearly shows the contract contemplated an indefinite term of office, limited to three years.

Appellant actually paid the portion of respondent's salary received by him for less than the three-year period, and thereby makes applicable this observation of 2 Williston on Contracts, sec. 862, p. 1651:

"Contracts of service for a specified term are held severable when the wages or salary can be construed as payable at specified shorter periods, and generally the mere fact that a rate for the shorter period is stated seems enough to warrant such a construction."

Furthermore, appellant does not appear to have been in any way prejudiced by this instruction because its contention is that respondent should have received nothing unless he fully complied, though the context of the pertinent documents does not support such theory, and, if he fully complied, he would be entitled to the full period. The jury evidently gave him the full period, because there is no reasonable basis for assuming that the $400 deduction in the verdict was reduced salary, instead of the $400 which was claimed to have been paid Mitchell, in view of Instruction No. 14. Appellant, by paying for the half year and

not suing to recover it or recoup itself in the way of damages for respondent's not having completed his full year, if that was the contract, gives sanction to the conclusion that the contract might be partly performed as to time, entitling respondent to part pay for less periods of time than a year. By paragraph 7 of the answer, appellant concedes that respondent performed to October 29, 1926. The instruction recognizing payment on a monthly basis was justified. (39 C. J. 43; *Keane v. Lieber,* 107 N. Y. Supp. 102.)

Respondent, over appellant's objection, testified, in substance, that, after he had received the balance totaling $7,500 paid him by appellant, in April, 1927, and while he was in Los Angeles at the office of appellant company, in June, 1927, checking up on the accounts of Cooley Butler, who was treasurer of appellant company, he saw in the company's office some unsigned salary checks made out in his favor. The admission of this evidence was objected to, and the court's ruling challenged by Assignment No. 9.

Appellant received the benefit of the services of Brown (the bookkeeper who made out the checks in question), in acting as its authorized agent to make out and send checks in payment of salaries for Mr. Butler, as shown without objection by Plaintiff's Exhibit "H," a letter addressed to Doctor Weed:

"We are enclosing check and voucher covering salary to March 21st, and regret we are so late in sending same, but this was due to the fact that Mr. Butler has been absent from the city and our neglect in not having him sign checks before his departure.

"Please sign and return the enclosed voucher."

This letter was signed "IDAHO COPPER COMPANY, By C. F. Brown." The above record shows there was no error because connection between Brown and the company was shown by the acts of the company itself, and later, evidence to the same effect as that contended for the checks was introduced without objection. (*Taylor v. Fluharty,* 41 Ida. 511, 239 Pac. 1049; *State v. Black,* 36 Ida. 27, 30,

208 Pac. 851; *Rowland v. Demming Exploration Co.,* 45 Ida. 99, 260 Pac. 1032; *Continental Nat. Bank v. Cole, ante,* p. 140, 3 Pac. (2d) 1103; *Intermountain Assn. Credit Men v. Pierce,* 43 Ida. 279, 284, 251 Pac. 615.) Griggs and Butler both took the stand but never denied Brown's authority to make out checks. Griggs testified about respondent's visit to appellant's offices in June, 1927, when respondent said he saw the checks, and Griggs didn't deny the checks were made out as respondent said they were.

" 'Where a party has it within his power to produce witnesses, presumably favorably disposed toward him, to explain a transaction or answer a controverted question, his failure so to do, unless satisfactorily explained, justifies an inference that the testimony, if produced, would be unfavorable to his side of the controversy.' " (*Sullivan v. Idaho Wholesale Co.,* 43 Ida. 149, 155, 249 Pac. 895.)

By Assignment No. 15, appellant questions Instruction No. 12, which was as follows:

"You are instructed that, as a matter of law, where a person contracts to render certain services, and he is permitted to remain in the said employment after the employer knows of derelictions in that respect, without discharging such employee, the employee can recover the value of his services during the time he has rendered them.

"Whether or not in this case the plaintiff rendered and performed the services contemplated by his contract with the defendant company, whether he failed so to do and such failure was brought home to the officers of the company, and in fact the whole question as to whether the plaintiff performed his contract so as to be entitled to compensation for the last half of the year are questions solely for the jury to determine under the facts proven in this case."

Urging that, under an averment of performance, one may not recover under proof of waiver or excuse for nonperformance, citing the following authorities to sustain such position: 13 C. J., sec. 917, p. 753, *Peek v. Steinberg,* 163 Cal. 127, 124 Pac. 834, 836, *Lombard v. Overland Ditch & Res. Co.,* 41 Colo. 253, 92 Pac. 695, 696, *Hind v. Oriental Products*

Co., 195 Cal. 655, 235 Pac. 438, 444, *Kirk v. Culley*, 202 Cal. 501, 261 Pac. 994, 996, *De Vol v. Citizens Bank*, 113 Or. 595, 233 Pac. 1008, 1011, *Lusk Lumber Co. v. Independent Producers Consolidated*, 35 Wyo. 381, 249 Pac. 790, 792, and 13 C. J. 731, 732, sec. 862; 13 C. J. 754, sec. 917; 39 C. J. 169, sec. 230; *Allen v. Burns*, 201 Mass. 74, 87 N. E. 194, 195; *McMillan v. Montgomery*, 121 Or. 28, 253 Pac. 879; *Reilly v. Waterson, Berlin & Snyder Co.*, 202 App. Div. 634, 195 N. Y. Supp. 633, 637; *Koehler v. Buhl*, 94 Mich. 496, 54 N. W. 157.

Reading the entire instruction, it is apparent that it is not an instruction as to waiver, but one defining the resulting obligation resting upon an employer, who accepts the services of his employee during the period in dispute without objection; in other words, an implied indication of satisfaction with performance. Appellant's own pleading, paragraph 7 of the answer, shows at least in substance either acceptance or waiver, in that it is alleged therein that respondent performed no services after October, 1926, and yet was paid up to March 21, 1927. Furthermore, appellant itself, introduced evidence without objection that respondent's services were unsatisfactory to Griggs as early as October, 1926, and January, 1927, yet he did not seek to have Rice or the appellant corporation oust respondent.

At this point, it is pertinent to remark that it should be kept in mind that the appellant is a corporation, and that there is no showing in the record that appellant, as a corporation, at any time until this action was commenced, ever in any way indicated that respondent's services were not to be paid as stipulated, for the full period between September, 1926, and September, 1927. This action was not filed until July 26, 1930. This delay was, at least, unfair to respondent. (*Hoebel v. Raymond*, 46 Ida. 55, 266 Pac. 433.)

Counsel for appellant say in its reply brief: "Our complaint is that the testimony shows he performed no service, and particularly that he failed to perform the particular service which we required of him." Who is meant by

"we"? If Butler and Griggs, how could they bind the corporation? If Rice, even though Defendant's Exhibits Nos. 17. and 18, showed Rice was dissatisfied, he continued respondent in employment.

Appellant also says as to the substance of the first paragraph of this instruction:

"Respondent's proposition of Law No. 111 is probably correct as an abstract statement of law, but the question presented here is whether or not the appellant had the right, under the contract of employment, to discharge respondent; it will be remembered that respondent in his brief lays great stress on the fact that he was subject to dismissal only by Rice."

It would be inconsistent for Butler and Griggs to contend their dissatisfaction should deprive respondent of his pay when they concede it was not sufficient to have made him quit.

The letter written respondent October 26, 1926, introduced in evidence as Defendant's Exhibit 6, showed that at that time appellant, even as to Butler and Griggs, still desired to continue to avail itself of his services. March 2, 1927, the organization was still accepting his services as shown by the letter, Plaintiff's Exhibit "Y." In this connection, it is to be borne in mind that the corporation was under the control, as voluntarily contracted by Butler and Griggs and others through the original contract, Plaintiff's Exhibit "A," of the four directors in New York, who were entirely dominated and controlled by Rice. This arrangement was evidently entirely agreeable to Butler and Griggs, and it was so specified in the contract, Plaintiff's Exhibit "A."

The employer should be held to the terms of the contract, equally with the employee. (39 C. J. 43.) The contract is to be given effect according to its clear and unambiguous terms, and this court may not substitute or write a new contract for the parties. (*Ehlinger v. Washburn-Wilson Seed Co., ante,* p. 17, 1 Pac. (2d) 188; *Sorensen v. La Rue,* 43

Ida. 292, 305, 252 Pac. 494; *Hinsch v. Mothorn*, 44 Ida. 539, 543, 258 Pac. 540.) Appellant contends that it had no notice of any contention of waiver or acceptance after notice of failure of performance, and yet this issue was clearly called to the attention of court and counsel by respondent's motion to strike, which, while not granted, was sufficient to apprise appellant of respondent's position in regard to this matter. It was the introduction of evidence by appellant that prompted this motion. It further appears that the appellant was given full opportunity to meet this issue even though it had not alleged that it had been in any way damaged by the alleged nonperformance of respondent. (*Brownold v. Rodbell*, 130 App. Div. 371, 114 N. Y. Supp. 846; *Person v. McCargar*, 92 Minn. 294, 99 N. W. 885; *Miller v. Owens*, 140 Minn. 351, 168 N. W. 50.) So far as this issue is concerned, therefore, it appears to have been before the court and considered by both parties, and evidence was introduced without objection by both appellant and respondent, with regard to what respondent did to perform the contract, or according to appellant's contention, what he did or did not do in not performing, and in regard to the attitude of the individual directors. Therefore, when the entire instruction is considered, and viewed in connection with Instruction No. 11, about which no complaint is made, it is apparent the court did not err in giving of its own motion this instruction, which it evidently felt essential for the jury to have in considering the issues as presented to the jury. (*Hind v. Oriental Products Co.*, 195 Cal. 655, 235 Pac. 438; *Walker v. Idaho Lettuce Co.*, 44 Ida. 478, 258 Pac. 931; *Marshall-Wells Co. v. Kramlich*, 46 Ida. 355, 267 Pac. 611; *Advance-Rumely Thresher Co. v. Jacobs*, ante, p. 160, 4 Pac. (2d) 657; *Butland v. City of Caldwell*, ante, p. 483, 6 Pac. (2d) 493.) The statement in *Miller v. Prout*, 33 Ida. 709, at 715, 197 Pac. 1023, distinguishes that case and *Rogers v. Rogers*, 35 Ida. 645, 208 Pac. 234, from the rule announced herein. Under somewhat similar circumstances, this court has deemed the pleadings amended to comply with such injected issue. (*Snyder v.*

*Raymond,* 48 Ida. 810, 818, 285 Pac. 478; *Sarvis v. Childs, Bond etc. Co.,* 49 Ida. 79, 89, 286 Pac. 914.) As a matter of pleading, the instruction was justified.

As to the substance of the first paragraph of the instruction, this court has said of building contracts, which are somewhat similar in principle:

"Had it been a patent and obvious defect or a failure to complete the building, the defendant would, under ordinary circumstances, be held to have waived the same by taking possession of the building without doing so conditionally or protesting against its condition or demanding its completion." (*Steltz v. Armory Co., Ltd.,* 15 Ida. 551, 555, 99 Pac. 98, 20 L. R. A., N. S., 872.)

"It was said that this is but an application of the elementary principle that, where property is delivered by one person to another, as fulfilling an executory contract between them requiring such delivery, and the latter neglects to notify the former that the property is not accepted as complying with the contract within a reasonable time after a fair opportunity to inspect it, an acceptance will be inferred, and that 'any considerable delay in that regard must operate, by all equitable considerations, as an acceptance, except as to defects not discoverable by reasonable attention to the duties of inspection.'" (*City Street Improvement Co. v. City of Marysville,* 155 Cal. 419, 101 Pac. 308, 313, 23 L. R. A., N. S., 317.)

It was for the jury to reconcile the conflicts in the evidence, but the law as stated in the instruction was proper for their guidance. As pointed out in appellant's reply brief, Butler's and Grigg's complaints are of no significance, but Rice's, or appellant's, lack of complaint is vitally significant, and all parties at all times knew what respondent was doing. (*Miller v. Owens,* 140 Minn. 351, 168 N. W. 50; *Olson v. Harvey,* 68 Colo. 180, 188 Pac. 751; *Bunnell v. Traynor,* 78 Ind. App. 140, 133 N. E. 503; *Brownold v. Rodbell,* 130 App. Div. 371, 114 N. Y. Supp. 846; *Natelson v. Gottlieb,* 153 N. Y. Supp. 1; *Person v. McCargar,* 92

Minn. 294, 99 N. W. 885; *Glendale Fruit Co. v. Hirst,* 6 Ariz. 428, 59 Pac. 103; *Starke v. Crilley,* 59 Wis. 203, 18 N. W. 6; *Vail v. Rumsey & Sikemeier Co.,* 137 Mo. App. 446, 119 S. W. 42; *Phillips v. Universal Upholstering Co.,* 248 Mass. 475, 143 N. E. 334; *Hobbs v. Riddick,* 50 N. C. 80.)

Our conclusion that this instruction was justified both as to the issue being before the court and its substantive probity is fully sustained in the following case, pertinent and analogous both as to the facts and the law:

"This action was brought to recover $760 alleged to be a balance due for work and labor performed by the plaintiff for the defendants under a written contract. . . . .

"The contract specifies somewhat in detail the character of work required of the plaintiff, but it also contains these provisions: (1) That the work shall be done 'in a good and farmer like manner and according to the rules of husbandry practiced in the neighborhood, reference being had to the nature of the crop'; and (2) 'said first parties (defendants) shall be the exclusive judges of the efficiency of the work to be performed by the second party (plaintiff) herein.' "

As to the motion for nonsuit, the court said:

"Considered in the light of the rule just mentioned, and it is not open to doubt that plaintiff made out a *prima facie* case upon either of two theories: (1) Acceptance of his work by the defendants, after they had passed judgment upon it or, in other words, a determination by defendants that plaintiff had performed the work according to the terms of the contract and to their satisfaction as to its efficiency; or (2) a waiver by the defendants of any want of, or defect in, performance of the contract on the plaintiff's part.

"1. It is to be observed that by the terms of the contract these defendants reserved to themselves the right to be the 'exclusive judges of the efficiency of the work' which plaintiff was required to do under the contract. . . . .

"That part payment with full knowledge of the facts tends to prove a waiver of any defects in the performance, the authorities are all agreed. *Johnson v. Gallatin Valley Milling Co.*, 38 Mont. 83, 98 Pac. 883; *Monroe Water Works Co. v. City of Monroe,* 110 Wis. 11, 85 N. W. 685; *Katz v. Bedford,* 77 Cal. 319, 19 Pac. 523, 1 L. R. A. 826; *California Southern Hotel Co. v. Callender,* 94 Cal. 120, 29 Pac. 859, 28 Am. St. 99; *Phillips & Colby Construction Co. v. Seymour,* 91 U. S. 646, 23 L. Ed. 341." (*Lackman v. Simpson,* 46 Mont. 518, 129 Pac. 325, 326.)

The statement by the court that part payment would not amount in law to acceptance and waiver does not make erroneous the instruction herein considered, for herein we have retention by the employer of the employee for the full term, and by the latter part of the instruction, the questions of fact were left for the determination of the jury in accord with the above authority. (*Kelly v. Gullickson,* 75 Mont. 66, 241 Pac. 623; *La Bonte v. Mutual Fire & Lightning Ins. Co.,* 75 Mont. 1, 241 Pac. 631; *St. George v. Boucher,* 84 Mont. 158, 274 Pac. 489.)

Assignment No. 11 challenges Instruction No. 6 because it omits therefrom the phrase "from time to time," as contained in the contract Plaintiff's Exhibit "A." From the discussion above, it is apparent that a continuity of Weed's employment depended upon his satisfying Rice. In other words, Rice had the whip-hand as to the continuation of Weed's employment, and there is no showing that Rice was so dissatisfied with Weed's services, because he, Rice, used Weed's services more than "from time to time," as to justify the refusal of the company to pay. If there was a contention that Weed was giving more time to Rice than to the other officers or affairs of the company, that would be a matter under the terms of the contract, between what might be termed the two factions, i. e., Silva and Butler; not Weed and the company. There is no contention that Weed while in New York, or away from the properties in Idaho, was not serving Rice, the contract as to Weed's right to receive pay from the company recognized this, and while,

which we do not hold, the company may have cause for complaint against Rice for taking more of Weed's time than he was entitled to, this should not deprive Weed of his compensation which the company was to pay. The fountainhead of the difficulty in this particular, is not Weed's lack of performance, but the peculiarity of the contract. The instruction would possibly, as to the omission of "from time to time," have been erroneous in an action between the company and Rice, but was, as to Weed's performance by satisfying Rice as he was compelled to do at his peril of employment, not incorrect. (13 C. J. 676; 9 C. J. 772, 783, 804.)

Appellant reiterates the argument that it is unfair and illegal to require *them* to pay for the services of respondent rendered Rice. Such position is fallacious for two reasons: First, it is apparent that "them" refers to Butler and Griggs, yet they were neither the corporation nor the parties whom, under the contract, respondent was to satisfy. In the second place, Rice was the one to be satisfied, and he and his three directors in New York controlled the corporation. We may concede the rule that an employee may not excuse his failure to perform or plead justification through defective performance when interference has occured through outsiders. The interference with what Butler and Griggs thought or testified respondent should have done was not by an outsider, but was in fact by the employer. The corporation, through the acts of the directors in New York, have placed a practical construction upon the words "from time to time," and not only during the entire year for which compensation is sought, ending September, 1927, but even up to and until this suit was instituted, the corporation, as such, did not by resolution of its board of directors or their concerted action, in any other way place a different construction upon this portion of the contract. (9 C. J. 783, 804.) If Griggs and Butler thought the construction placed by Rice upon the contract was improper, the proper course of action, to affect respondent, was to have proceeded through the internal management of

the corporation, not to wait until after Weed's services had been accepted by the corporation, and so far as his services rendered to Rice in New York are concerned, they were accepted by the corporation, and then seek to avoid payment.

Appellant contends that the court erred in giving Instruction No. 10, in effect, that respondent was entitled to recover if he established by a preponderance of the evidence that he had substantially complied with his contract, on three grounds, viz.: 1. That the question of substantial performance is not raised by the pleadings; 2. That it conflicts with the previous instruction, wherein he advised them that respondent must show that he had "fully" performed such contract; and 3. That, conceding the issue of substantial performance was raised by the pleadings, it failed to define "substantial performance."

The first contention is based on the fact that respondent alleged that he had "duly performed" all the terms and conditions of the contract, and that such allegation is the equivalent of "fully" or "strictly" performed. Such allegation is a legal conclusion, permissible under C. S., sec. 6712, in lieu of pleading the facts relied on as constituting performance, and means that such contract has been performed in accordance with what is right, required or suitable, or in accordance with the law. Whether such performance need be strict or substantial depends upon the substantive law of contracts in the particular jurisdiction where the question arises. In Idaho, recovery is allowed on proof of substantial performance in a proper case. (*Austin v. Brown Bros.*, 30 Ida. 167, 164 Pac. 95; *Boyden v. United Mercury Mines*, 46 Ida. 303, 267 Pac. 830.) A contract for purely personal services is such a proper case. Hence, a plea of due performance will support a verdict or finding of substantial performance. The case of *Lusk Lumber Co. v. Independent Producers Consolidated, supra,* relied on by appellant to support this contention, holds that if a party seeks to avoid pleading the facts showing performance, he must conform to the statutory form, and a

pleading that plaintiff "substantially" performed his contract is not sufficient compliance with a statute allowing him to plead that he "duly performed." He must either use the statutory form or plead the facts. That case and the authorities therein cited are authority for the proposition that a plea of performance will permit a recovery on proof of substantial performance.

The second ground of attack on the instruction is likewise without merit. As seen above, the instruction on substantial performance, as far as the theory of the case is concerned, was correct. Instruction No. 9, requiring proof of full compliance, was erroneous. Appellant himself requested the latter instruction, and the rule is well settled that a party may not assign as error inconsistency in instructions produced by the giving of an instruction he requested. (*Knollin v. Jones*, 7 Ida. 466, 63 Pac. 638; 4 C. J. 708, note 21.)

Appellant cites respectable authority to the effect that it is fatal error for the court to instruct on the issue of substantial performance without defining the meaning of the term. A careful study of these cases does not disclose whether a request had been made for such instruction, but it is certain that the jurisdictions in which they were decided adhere to the rule that, in the absence of requests therefor, a party cannot assign as error the failure of the court to define words and terms used in an instruction. The Texas supreme court passed specifically on the failure of a trial court to define "substantial performance" in *Elmberg Co. v. Dunlap Hardware Co.*, (Tex. Com. App.) 267 S. W. 258, holding it was not error in the absence of a request therefor. Such is the rule in this state. (*Joyce Bros. v. Stanfield*, 33 Ida. 68, 189 Pac. 1104; *Lessman v. Anschustigui*, 37 Ida. 127, 215 Pac. 460; *Boomer v. Isley*, 49 Ida. 666, 290 Pac. 405.)

Approaching this phase of the controversy from the standpoint that substantial performance though limited to the satisfaction of Silva, or his *alter ego*, Rice, must have

been such performance as to meet the requirements of a reasonable person under like circumstances, brings us logically to a consideration of the sufficiency of the evidence to sustain the verdict; directly as to the first cause of action and indirectly as to the second cause of action, because, unless as indicated above, the expenditures in the way of expenses were made in furtherance of the master's work, the servant in this case, respondent, would not be entitled to reimbursement therefor.

The principal point in this regard made by appellants is that respondent did not comply with repeated requests of Butler and Griggs for reports and suggestions as to how the work on the various properties was to be prosecuted, and, in particular, in connection with the letter sent respondent October 26, 1926, Defendant's Exhibit 6. The respondent testified that he made out an answer (offered as Defendant's Exhibit 7 for Identification), which he gave to Andrews, a director in New York City, with instructions that it should be sent to Butler and Griggs, or Butler or Griggs, in California. The matter contained in Defendant's Exhibit 7 had previously been examined by Rockwood, another one of Rice's directors. The letter was never sent, and was not admitted in evidence. Respondent has not appealed; therefore the question of the nonadmission of this letter is not before us. It, however, has its bearing upon the phase of the controversy under consideration in this, that respondent offered evidence to the effect that as to this particular request of Butler and Griggs, he did respond to the satisfaction of the New York officers; at least the evidence does not disclose that thereafter any criticism was offered by the New York directors with regard to his remission, if any, in this respect. With regard to other reports requested, and concerning whose noncompletion complaint is made, while there is a dispute in the record, there is sufficient evidence to warrant the jury in concluding that respondent's failure, if any, to comply with the requests of Butler and Griggs, was because of the fact

that he was retained in New York by a majority of the board of directors, whose actions in this regard, if they be considered informal because not the result of regular meetings resulting in minutes, etc., yet are of equal dignity with the actions of two of the directors, or three; at least a minority of the board in California.

We have examined the evidence very carefully, and while minds might differ as to whether or not respondent had complied substantially with all the requests made by Butler and Griggs, it would be entirely unwarranted for us to conclude that there was not sufficient evidence to justify the jury in deciding that he had substantially complied with requests of the appellant corporation, given him by appellant, or a majority of its officers.

Judgment as ordered modified, affirmed; costs awarded to respondent.

Lee, C. J., Budge and Leeper, JJ., and Rice, D. J., concur.

Varian, J., disqualified, did not participate.

Petition for rehearing denied.